# HENRY HITCHCOCK

*v.*

# BARTHOLOMEW FORTIER *et al.*

65   239
146   300

1. VENDOR AND VENDEE—*failure of title as a defense to suit for purchase money.* Where a wife, having a claim to real estate, sold the same, her husband uniting with her in the conveyance, in which they covenanted that she was the sole heir of the party through whom she claimed to derive title, and that the grantors would warrant against all persons claiming through them; and it turned out the claim was invalid, so that the purchaser acquired no title through the conveyance, but no fraud was practiced upon him: *Held,* that, as the grantors were not guilty of any fraud, and made no covenants as to the title, the purchaser could not resist payment of his notes given for the purchase money on the ground that he acquired no title, and where the notes were secured by mortgage, those holding under him were in the same position.

2. If the owner and occupant of land buys an outstanding claim thereto to avoid litigation, and gives back a mortgage, he may resist its payment if fraud has been practiced upon him, or if the vendor of the outstanding claim has entered into covenants that are broken; but if no fraud has been practiced, and no covenants made respecting the title, the mortgagor can not insist that the court shall order the sale only of such title as he acquired by his purchase.

3. DEED—*where a subsequently acquired title passes by.* Where a party received a conveyance for land without covenants for title, and no fraud was practiced upon him, and gave back a mortgage containing full covenants to secure the payment of the purchase money, and it proved that he acquired no title by his purchase, but he afterwards did acquire title to a portion of the premises from another source: *Held,* that the subsequently acquired title inured to the benefit of the mortgagee by virtue of the covenants in his mortgage, and was subject to be sold on foreclosure.

4. MORTGAGE—*mortgagee, or his assignee in possession, must account for rents.* Where a senior mortgagee, or his assignee, is in possession of the mortgaged premises, he must apply the rents towards the satisfaction of his debt, and can not permit the owner of the equity of redemption to receive them to the prejudice of a junior mortgagee. If he does, it seems that he will be postponed to the junior mortgagee to the extent of the rents and profits he thus improperly allows the owner of the equity of redemption to receive.

5. SAME—*satisfaction—merger.* In this case the senior mortgagee, before the filing of his bill to foreclose, had been in the receipt of the rents

and profits under an amicable arrangement with the mortgagor. After the bill was filed, one D acquired the equity of redemption, when the senior mortgagee had a receiver appointed to collect the rents from A, the tenant of the premises. D then conveyed the equity of redemption to B, his attorney, and then bought the notes and mortgage of the senior mortgagee, who united with D in a notice to the receiver that he need no longer collect the rents, thus leaving D in possession, with A as his tenant. D, through his attorney, B, then sold the tenant, A, the property, covenanting to convey, on full payment, not only the equity of redemption then standing in the attorney, but any title that might accrue under the foreclosure of the senior mortgage. The holder of the junior mortgage was seeking, by cross-bill in the same suit, to foreclose his mortgage, and to have the rents applied upon the senior one: *Held,* that if the purchase money, or enough of it to satisfy the senior mortgage, had been paid to D by A, the purchaser of the equity of redemption, there was no reason for keeping the prior mortgage alive as against the junior one.

APPEAL from the Circuit Court of Peoria county; the Hon. S. D. PUTERBAUGH, Judge, presiding.

This was a bill in chancery, by the appellee against McFadden and others, for the foreclosure of a mortgage given by McFadden in April, 1849. The appellant, who was made a defendant, filed a cross-bill to foreclose a second mortgage given by McFadden on the same property. The material facts are stated in the opinion.

Mr. D. McCULLOCH, for the appellant.

Mr. CHIEF JUSTICE LAWRENCE delivered the opinion of the Court:

On the 18th of April, 1849, Angelica Fortier, claiming certain property in the city of Peoria, sold the same to one McFadden, and, with her husband, executed to him a conveyance covenanting that she was sole heir of one Francis Willette, and that the grantors would warrant against all persons claiming through them. McFadden executed to Fortier his notes for the unpaid portion of the purchase money, and secured them by a mortgage on the same premises. The mortgage contained full covenants.

McFadden, in February, 1850, bought from one Murray another title to a portion of the premises, under which he acquired possession. It is admitted that this was the paramount title, the Fortier claim proving to be invalid.

In 1855, McFadden executed another mortgage to one Tillay, to secure a debt due him, which mortgage subsequently came by assignment to Hitchcock, the appellant.

The original bill in this case was filed to foreclose the mortgage given to Fortier, and a cross-bill was filed to foreclose that given to Tillay. The circuit court held the first mortgage valid, and decreed its foreclosure for the amount found to be due. Hitchcock, claiming under the second mortgage, brings the record here.

It is contended by counsel for appellant, in an ingenious argument, that the title acquired by McFadden from Murray should not be considered as inuring to the benefit of Fortier, under the covenants in the mortgage made to him, and that those covenants should be considered as relating only to the estate acquired by Fortier from McFadden. There is, at its first presentation, a certain plausibility in this view, but we do not, on consideration, deem it sound.

The only question is, whether the alleged debt from McFadden to Fortier is a valid debt. If it is, Fortier is entitled to the same benefit from his mortgage as any other mortgagee, and can claim the application of the same rules of construction that would be applied to any other mortgagee.

Neither law nor equity confines the vendor of land to the land sold as a means of enforcing payment. By recovering judgment he may exhaust all the other property of his debtor, if necessary, in order to secure payment. So the vendor of land, taking back a mortgage, is not confined, on a foreclosure, to the title which he has sold, but can sell whatever title the mortgagor had at the making of the mortgage, or has since acquired, if the covenants in the mortgage are such as to pass a subsequently acquired title.

A vendor of realty sometimes insists upon a mortgage covering other property besides that sold. Instead of doing this, he may be content with a mortgage upon the property sold, if the mortgagor is willing to insert such covenants as will cover after-acquired titles, and forever estop him, and all claiming under him, from setting up a title adverse to that of the mortgagee, in order to defeat the mortgage. When made a matter of contract, there is nothing inequitable in this—nothing which should restrain a court of chancery from enforcing the contract.

If the owner and occupant of a piece of land buys an outstanding claim, to avoid litigation, and gives back a mortgage, he may resist its payment, if fraud has been practiced upon him, or if the vendor of the outstanding claim has entered into covenants that are broken. But if no fraud has been practiced, and no covenants were given, the mortgagor can not insist that the court shall order the sale only of such title as he acquired by his purchase. No court would make such a decree, and yet we could not stop short of it if we were to hold as urged by counsel for appellant.

As we have already said, the only question is as to the validity of the debt. If valid, whether arising from the sale of a claim to the mortgaged premises, or from a loan of money to the mortgagor, the mortgagee is entitled to demand the benefit of the mortgage, with all the incidents attached to it by the law.

Here, Fortier neither practiced a fraud nor covenanted as to his title, and it has long been settled in this State, that, where there is neither fraud nor warranty, the purchaser of land can not resist payment of the notes he may have given, on the ground that he did not acquire title.

In ascertaining the amount due on the mortgage, the court charged the mortgagee, Fortier, with rents and profits for a considerable period, but held him not liable subsequent to March 27, 1864. The refusal to charge him since that date is assigned as error.

We have not been aided in this case by an argument from appellee, and possibly may have overlooked some considerations that might have been urged in behalf of the decree as rendered.

Some time prior to the commencement of the suit, Fortier had been in receipt of rents and profits by an amicable arrangement between him and McFadden.

Soon after the suit was commenced, one Darst bought from McFadden the equity of redemption. Then, on the application of Fortier, the court appointed a receiver to collect the rents from one Phillips, the occupant of the premises. Shortly after this order was made, Darst conveyed the equity of redemption to Lindsay, his attorney, and then bought from Fortier the notes and mortgage.

The conveyance to Lindsay was probably made in anticipation of this purchase, and to prevent the raising of any question in regard to a technical merger. But if it was for that purpose, there was nothing in it illegal or objectionable. However, when Fortier sold his notes and mortgage to Darst, they united in a notice to the receiver that he need no longer collect the rents, thus leaving Darst in possession, with Phillips as his tenant. The next step was the execution of a contract by Lindsay to Phillips, by which Lindsay, for a valuable consideration, sold him the property, and covenanted, on the payment of the purchase money, a part of which was paid in hand, to convey to him not only his own title as owner of the equity of redemption, but any title that might accrue under the Fortier mortgage.

In this contract Phillips is recognized expressly as holding under Darst, and it is provided that, in case the premises are redeemed by the creditors of McFadden, from a sale under the Fortier mortgage, Lindsay shall repay to Phillips whatever he may have paid on the contract, and settle with him as tenant of Darst.

If this transaction was what it purports on the face of the contract to have been—a sale by Lindsay of the equity of

redemption, with an agreement to convey also any title that might be derived from a sale under the Fortier mortgage—and if the purchase money, or enough of it to satisfy the mortgage, has been paid to Darst, as is fairly to be inferred from his own testimony, we do not see why this mortgage should be kept on foot to the prejudice of the junior mortgagee.

We do not see that Darst has any equities, as the mortgage owned by him is paid by money received from his tenant, Phillips. If Phillips has any equities requiring the Fortier mortgage to be kept alive for his protection, as against the junior mortgagee, we can only say that we have not discovered them in the record, and counsel have not appeared to point them out.

Even if Darst did not receive, from the proceeds of Lindsay's sale to Phillips, enough money to satisfy his mortgage, or any part of the money, it does not appear why he did not continue to collect rents from Phillips, who was in possession as his tenant. If the senior mortgagee is in possession, he must apply the rents towards the satisfaction of his debt, and can not permit the owner of the equity of redemption to receive them to the prejudice of a junior mortgagee. In that event, he might justly be postponed to a junior mortgagee to the extent of the rents and profits that he has improperly permitted the owner of the equity to receive. 1 Hilliard on Mortg. 439; *Coppering* v. *Cooke*, 1 Vern. 270; *Chapman* v. *Tanner*, ib. 267.

As the record stands, we do not think justice has been done, and we must reverse the decree and remand the case, with leave to the parties to take further testimony if they desire.

*Decree reversed.*