[No. 4,471.]

## BARTON DANIELS v. JAMES H. HENDERSON.

EFFECT OF FORECLOSURE OF MORTGAGE.—If one who has obtained a certificate of purchase from the State for a sixteenth or thirty-sixth section, conveys the same, and the grantee gives him a mortgage to secure the purchase-money, and he assigns the mortgage and debt to a third party who forecloses and obtains a sheriff's deed, evidence of such facts tends to show that the right which was granted by the State by the certificate of purchase, had vested in the holder of the sheriff's deed, and that he thereby became entitled to the possession of the premises.

JUDGMENT DENYING WRIT OF ASSISTANCE AS AN ESTOPPEL.—A judgment that a party who holds a sheriff's deed, given under a foreclosure sale, is not entitled to a writ of assistance, as against one not a party to the foreclosure, does not estop the person against whom it was rendered from proving that he was entitled to the possession of the premises, in an action brought by the person in whose favor it was rendered for rents and

profits while the former held a possession which he acquired under the writ, and until the order granting it was reversed by the Supreme Court.

EFFECT OF JUDGMENT OF FORECLOSURE.—The grantee of the mortgagor, who takes his conveyance after a *lis pendens* has been filed in a foreclosure suit, or who buys before the suit is commenced, but does not record his deed until after the suit is commenced, is bound by the judgment of foreclosure, although not made a party to the action.

APPEAL from the District Court, Sixth Judicial District, County of Sacramento.

By a reference to the 45th of Cal. 647, some of the facts will be found stated which apply to this case.

Under the writ of assistance which was issued as there stated, on the 22d of October, 1872, Henderson, the defendant here, was, on the 29th of October following, placed in possession of the north-west quarter, the south-west quarter, the west half of the north-west quarter, and the north-west quarter of the south-east quarter of section thirty-six, township five north, range seven east, Mount Diablo meridian. Henderson remained in possession until the 20th of August, 1873, when Daniels was restored to possession, under the decision of the Supreme Court. Daniels then brought this action to recover the rents and profits of the land, while Henderson was thus in possession. In his complaint, he merely alleged that he was in possession on the 29th day of October, 1872, and that the defendant then ousted him wrongfully and entered into possession and enjoyed the rents and profits until the 20th of August, 1873, and that he was entitled to the possession when the defendant entered, and during all the time the defendant was in possession. The defendant, in his answer, denied that the plaintiff was entitled to the possession of the land.

The answer then proceeded as follows:

And for a further defense the defendant alleges that on the 28th day of October, 1868, one Jacob Morss filed in the State Land Office of California, an application for the purchase of the north-west quarter and north half of the south-west quarter of section thirty-six, township No. five north, range seven east, Mount Diablo meridian and base, San Joa-

quin county, California, which said application was approved January 2d, 1869, and a certificate of purchase for said land issued to said Morss May 11th, 1869, numbered 1778.

That on the 23d day of March, 1867, said Morss filed in said land office an application to purchase the south half of the south-west quarter of section thirty-six of said township and range, which said application was approved on the 4th day of June, 1867, and a certificate of purchase therefor issued to said Morss on the 30th day of August, 1867, numbered 744.

That on the 28th day of October, 1868, one William Morss filed in said land office an application for the purchase of the west half of the north-east quarter and north-west quarter of the south-east quarter of section thirty-six of said township and range, which application was approved on the 2d day of January, 1869, and a certificate of purchase therefor was issued to said William Morss, May 11th, 1869, numbered 1779.

That on the 16th day of November, 1868, the said Jacob and William Morss conveyed all the above described land to Nathaniel McTucker, who then and there executed and delivered to said Jacob Morss a mortgage in fee of all said land to secure the payment of a certain promissory note to wit: for the sum of $2,500. given for the balance of the purchase-money of said land

That on the 23d of June, 1869, the said Jacob and William Morss assigned to said McTucker their respective certificates of purchase hereinbefore mentioned, numbered 1778 and 1779, and on the 15th day of October, 1870, said certificate numbered 744 was assigned to said McTucker by said Jacob Morss.

That on the 26th day of November, 1868, said Jacob Morss assigned said note and mortgage to this defendant, which said mortgage was, after due proceedings had, foreclosed in the District Court of the Fifth Judicial District, in and for San Joaquin County, on the 18th day of May, 1871, and subsequently, to wit, on the 28th day of March, 1872, all of said lands were, by order of said Court, sold by the Sheriff of San Joaquin County, at public auction

to this defendant, and after the expiration of six months from said sale, to wit, on the 1st day of October, 1872, defendant received a deed from said Sheriff of all of said land.

That on the 13th day of October, 1869, the said Nathaniel McTucker executed a mortgage on said premises to secure the sum of $5,500, and at the same time assigned the certificate of purchase numbered 1779, and on the 26th day of August, 1869, assigned said certificate numbered 1778 to one John McTucker, which transactions, as affiant is informed and believes, were intended as a mortgage security for said $5,500 to said John McTucker, and not otherwise.

That on the 10th day of July, 1871, said certificate number 744 was assigned by said Nathaniel McTucker to one Mary McTucker without any valuable consideration whatever.

That at the time of the execution of the said mortgage by said Nathaniel McTucker to said John McTucker, said John McTucker was fully aware of the existence of the said mortgage held by defendant on said lands, which said mortgage was recorded in Book B of Mortgages, volume 9, pages ———.

That on the 13th day of September, 1871, a patent was issued to John McTucker and his heirs to the lands described in said certificates, numbered 1778 and 1779, and on the same day a patent was issued to said Mary McTucker and her heirs to the land described in certificate numbered 744. Defendant further alleges that if said plaintiff has any claim to said land the same was derived under said patents and not otherwise.

On the trial, the plaintiff introduced testimony showing his possession and ouster, and the value of the rents and profits. He then introduced the transcript on appeal of the case of *Henderson* v. *McTucker*, and the case, as reported in the 45 of Cal., and rested. The defendant offered to prove the facts set out as new matter in his answer, but the Court refused to allow the evidence.

The Court found as facts, that the plaintiff, prior to the 29th of October, 1872, was in the possession, and that the

defendant, acting under a supposed right given him by the writ of assistance, on said day, obtained possession of the land, and retained possession until August 20, 1873; and that the plaintiff was entitled to the possession. The plaintiff had judgment, and the defendant appealed.

The other facts are stated in the opinion.

*Byers & Elliott*, for the Appellant.

Upon the trial defendant offered to prove that the interest of John McTucker and his heirs was only by way of mortgage, and that the assignment of the certificate of purchase was to be taken in connection with the mortgage of N. to J. McTucker. From which we submit, John McTucker and plaintiff, if he was his lessee had no right of possession. The fact that the patent issued to John McTucker gave him no greater right than he had by virtue of his mortgage; this point is expressly decided in *Murray* v. *Walker* (31 N. Y. 399.) A case precisely parallel to this. There the mortgagor assigned a certificate of sale as security for a debt. The mortgagee paid the State the balance of the purchase-money and obtained the patent in his own name. Held that the patentee could not maintain ejectment under his patent, it being virtually an attempt by the mortgagee to eject the real owner. If John McTucker was not a party to the foreclosure suit, yet he was completely foreclosed whether vendee or mortgagee, if his conveyance was not recorded. (Pr. Act, Sec. 246, as amended Stat. 1866, p. 704.)

*L. S. Taylor, Armstrong*, and *McKune & Welty*, for the Respondent.

The special matter set up in the answer is irrelevant and immaterial, and does not constitute a defense as against respondent. It appears from the special matter set up in the answer that the mortgagor of appellant's assignor (Nathaniel McTucker), prior to the foreclosure of the mortgage by appellant against said McTucker, had assigned the certificates of purchase to John McTucker and Mary McTucker, neither of whom were made parties to the said foreclosure suit.

This foreclosure suit and purchase by.appellant as against John and Mary McTucker was ineffectual to convey any title or interest in the premises. (*Carpentier* v. *Williamson et al.*, 25 Cal. 160, and cases cited; *Bludworth* v. *Lake*, 33 Cal. 264.) Appellant therefore took no other interest in the land by his foreclosure suit than that owned and held by Nathaniel McTucker at the time of the foreclosure sale.

By the Court, RHODES, J.:

This action was brought to recover the rents and profits of certain premises, for the period of time during which the possession was held by the defendant, after the service of the writ of assistance, which was issued in the case of *Henderson* v. *McTucker*. The defendant offered evidence to prove that Jacob and William Morss purchased the premises from the State (they being a portion of a thirty-sixth section); that they conveyed the sâme to Nathaniel McTucker; that the latter executed to Jacob Morss a mortgage of the premises to secure a part of the purchase-money; that the mortgage and the note thereby secured were assigned to the defendant; that thereafter the mortgage was foreclosed, the premises sold, and a deed was executed by the sheriff to the defendant. The plaintiff objected to the evidence, and it·was excluded. Without regard to the question whether the answer states facts sufficient to entitle the defendant to affirmative relief, it is clear, we think, that the above mentioned evidence was admissible under the denial in the answer that the plaintiff was entitled to the possession of the premises. It tended to show that all the right which was transferred by the State to Jacob and William Morss, by the certificates of purchase, had vested in the defendant, and that he thereby became entitled to the possession of the premises.

It was determined in *Henderson* v. *McTucker* (45 Cal. 647), that the question as to the right of Daniels to the possession, as against Henderson, could not properly be litigated in a motion for a writ of assistance. The judgment, therefore, in that case did not determine or estop the

defendant from denying that Daniels was entitled to the possession of the premises.

The plaintiff also attempts to justify the exclusion of the evidence on the ground that before the foreclosure of the mortgage by Henderson, ·Nathaniel McTucker had assigned his certificates of purchase to John and Mary McTucker, who were not parties to the foreclosure suit, and that the plaintiff holding under them, is therefore unaffected by the judgment in that suit. To this position — assuming that such an assignment of the certificates was shown—there are several answers: one of which is that the defendant, in addition to the facts which the offered evidence tended to prove, might have been able to prove that John and Mary McTucker by the filing of a *lis pendens*, or because of a failure on their part to record the assignments of the certificates of purchase, as provided for by section 246 of the Practice Act, as amended by the statute of 1866, p. 704, or by some other means or mode, were bound by the judgment of foreclosure.

Judgment and order reversed, and cause remanded for a new trial.

Neither Mr. Chief Justice WALLACE nor Mr. Justice NILES expressed an opinion.