THOMAS S. BROWN ET AL. v. JAMES PHILLIPS.

*Affidavit of publication—Purchase money mortgage does not attach to after-acquired lands.*

The omission to state in an advertisement of a mortgage sale, that

only an undivided portion will be offered instead of the entire parcel, is not a jurisdictional defect that can be objected to in a collateral proceeding, but an irregularity that should be complained of in the same case.

Whether the mode of proving publication in cases of mortgage foreclosure is limited to that prescribed by statute, Comp. L., §§ 5924-7.—Q.

The following affidavit of publication in a foreclosure case is held sufficient under Comp. L., § 5927: " [Title and venue] Lee Gray Hull, a printer in the office of the Constantine Weekly Mercury, a public newspaper printed, published and circulated in the county of St. Joseph and State of Michigan, being duly sworn, says that the annexed notice, chancery order, has been published in said newspaper at least once in each week for six successive weeks; that the first publication of such notice in said newspaper was on the 12th day of December, A. D. 1872, and the last publication of the same was on the 30th day of January, A. D. 1873. [Signature and jurat.] "

Covenants will not be implied in a purchase money mortgage. Comp. L., § 4207.

One who gives a purchase money mortgage that includes lands not granted to him, is not estopped as against the grantors and mortgagees from denying that it covers those lands, if he acquire them afterwards.

A purchase money mortgage cannot attach to anything which the purchaser did not own at the time of giving it.

The fact that one who has purchased undivided shares of certain property, has mortgaged his interest as undivided shares, does not hinder him from afterwards mortgaging the whole property when he has acquired the remaining shares.

Error to St. Joseph. Submitted January 10. Decided January 28.

EJECTMENT. The facts are in the opinion.

*John B. Shipman* for plaintiff in error, as to proof of publication, cited *Hill v. Hoover*, 5 Wis., 362, 371; *Gillett v. Needham*, 37 Mich., 143. A mortgager's after-acquired title inures to the benefit of the mortgagee, *Tefft v. Munson*, 63 Barb., 31; *Hitchcock v. Fortier*, 65 Ill., 239; *King v. Gilson*, 32 Ill., 348; *Gochenour v. Moury*, 33 Ill., 331; *Jones v. King*, 25 Ill., 388; *Wark v. Willard*, 13 N. H., 389; *Massey v. Papin*, 24 How., 362; *Boisclair v. Jones*,

36 Ga., 499; *Humphrey v. Hurd*, 29 Mich., 44; *Barber v. Harris*, 15 Wend., 616; *Stevens v. Stevens*, 16 Johns., 110; *Farmers' etc. Bank v. Bronson*, 14 Mich., 361.

*H. H. Riley* for defendant in error. A deed and purchase money mortgage relating to the same subject matter, will be construed together, *Jackson v. Dunsbagh*, 1 Johns. Cas., 92; *Stow v. Tifft*, 15 Johns., 458; *Jackson v. McKenny*, 3 Wend., 233; *Hull v. Adams*, 1 Hill, 601; *Cornell v. Todd*, 2 Den., 130; *Bronson v. Green*, Walk. Ch., 59; *Jonson v. Moore*, 28 Mich., 3; one who has conveyed land cannot afterward claim it in opposition to his deed, *Jackson v. Ayers*, 14 Johns., 224; a warranty of right, title and interest in land, or a quit-claim, is not an estoppel to a claim and interest afterward acquired by the grantor, Bigelow on Estoppel, 335; *Blanchard v. Brooks*, 12 Pick., 47; *Comstock v. Smith*, 13 Pick., 116; *McBride v. Greenwood*, 11 Ga., 379; *Brown v. Jackson*, 3 Wheat., 149.

GRAVES, J. Phillips brought ejectment for the undivided three-eighths of the north half of the west half of the northwest quarter of section sixteen, in the township of Sturgis, in the county of St. Joseph, and was allowed to recover, and the defendants below brought error. The material facts are not disputed.

In 1850 Archibald Brown died seized of the whole forty acres and intestate. He left a widow, Jane Brown, who is one of the parties, and eight heirs at law, namely, Harriet Chase, Thomas S. Brown, Emeline A. Brown, Sarah E. Brown, Caroline Wilson, Abigail Davis, Jemima J. Munger, and Mary Phillips, wife of defendant in error. Of these heirs Thomas S. Brown, Sarah E. Brown, Emeline A. Brown and Caroline Wilson are parties. The forty acres therefore subject to the widow's dower descended to these eight heirs, each one being vested with a distinct undivided one-eighth part.

December 14th, 1867, Harriet Chase conveyed her share

to Thomas S. Brown and he thus became owner of two shares. February 17, 1868, the widow, Thomas S. Brown, Sarah E. Brown and Caroline Wilson quit-claimed their interests to Wier L. Drake. He thereby acquired the widow's interest in the forty acres, and the five shares or undivided eighth parts represented by the heirs making the grant. Three shares or undivided eighth parts still remained in the other heirs, Abigail Davis, Jemima J. Munger and Mary Phillips, wife of defendant in error.

To secure the payment of the purchase price of the widow's interest and the shares granted to him by this conveyance, Drake gave his mortgage for $950. It will be noticed that he acquired nothing more than the five shares and the interest of the widow and held nothing more which he could encumber. The mortgage, however, was made in terms upon the entire estate in the whole forty acres, and was drawn as running not only to Drake's grantors, but to Jemima J. Munger likewise. The case explains that she was put in as mortgagee without her knowledge or consent and in the expectation at the time that she would unite in the deed made by plaintiffs in error. She never acceded to the contract. It is probable that the wording of the mortgage as a pledge of the entire estate in the whole forty acres may also be accounted for by supposing the parties were contemplating the transfer of the other shares, but this is not important.

January 2d, 1869, Abigail Davis, Jemima J. Munger and Mrs. Phillips quit-claimed their shares to Drake. He then stood as owner of the equity of redemption of the undivided parts represented by the widow's interest and by the five shares conveyed to him February 17, 1868, and owner of the three shares last conveyed.

In this state of things he became indebted to defendant in error for $400. The debt was secured by note signed by himself and one John Morrison, and by his mortgage on the whole forty acres in question and also on the adjoining south forty acres. This mortgage was

dated January 13, 1869, and hence some days later than the deed. The latter was in fact given at the same time and the transactions were connected. It is well to observe in passing that Drake was at this time holder of the entire legal title and in a situation to mortgage the whole forty acres. The previous mortgage, which only attached to particular undivided shares, was no hindrance.

April 13, 1870, Drake and wife conveyed the equity of redemption in the entire forty acres in question to Laura A. Perry, and she held it until January 16, 1871, when she quit-claimed to Mrs. Drake.

In the meantime, and on December 20th, 1870, the sheriff in executing foreclosure proceedings under the statute on the first mortgage, being that given for $950 to plaintiffs in error, sold to the latter the entire forty acres. The sale did not become absolute until December, 1871.

February 14, 1872, defendant in error filed a bill to foreclose his mortgage for $400. He joined as defendants Drake and wife and John Morrison. Morrison was personally served, but Drake and wife were proceeded against as non-residents. The bill was taken as confessed, and $590.89 reported due. The bill contained the same description as the mortgage and made no allusion to partial or undivided interests, and the decree followed the bill. This is not important. No question of jurisdiction arises in regard to the right to maintain the bill. No one claims there was no subject matter left, even if some portion of the interests mortgaged had been taken away by regular foreclosure of the prior mortgage.

The commissioner advertised a sale pursuant to the decree, and failed to suggest that only an undivided three-eighths of the forty acres would be offered. If this was improper, as I think, it was still an irregularity at most to be complained of in the same case, and not a defect of jurisdiction which may be objected to in a collateral proceeding.

The sale was confined to three undivided eighth parts

of the forty acres and the whole of the forty acres lying south, and defendant in error became purchaser of both. The consideration for the former was $25, and that for the latter $65. July 18, 1873, the commissioner made conveyance and reported the sale and a deficiency of $546.79, and the proceedings were confirmed. When the proceedings were offered in evidence, their introduction was objected to on several grounds. Some of them have been sufficiently noticed already.

The chief objection is aimed at the proof of publication of the order for the absent defendants to appear.

The proof made was by affidavit in these terms, after giving the title of the cause:

"St. Joseph county—ss: Lee Gray Hull, a printer in the office of the Constantine Weekly Mercury, a public newspaper printed, published and circulated in the county of St. Joseph and State of Michigan, being duly sworn says that the annexed notice, chancery order, has been published in said newspaper at least once in each week for six successive weeks; that the first publication of such notice in said newspaper was on the 12th day of December, A. D. 1872, and the last publication of the same was on the 30th day of January, A. D. 1873."

Then followed the affiant's signature and a jurat in due form.

The argument against this affidavit assumes that the statute has exclusively prescribed what shall be proof in such cases, and that this proceeding is covered by Comp. L., § 5924. It is then said that the affidavit does not appear to be made as required by that section, namely, "by the printer of the paper or by his foreman or principal clerk," and further, that it is not stated that the notice was "taken from the paper in which it was published."

It is not admitted that the statute asumes to fix the exclusive mode of proof; but apart from this it is enough to say that the section cited has no application, and that if any statute governs, it must be § 5927, and which the affidavit substantially follows.

The next position is that when Drake became grantee of the three-eighths quit-claimed by Abigail Davis, Jemima J. Munger and Mrs. Phillips, in January, 1869, the grant inured to the benefit of plaintiffs in error as prior mortgagees of the entire estate in the whole forty acres.

That mortgage was given as a simple security without covenants of any kind, and its purpose was to secure the payment of the purchase price of the interests granted. It was, a purchase money mortgage, and nothing more. No covenant could be implied. Comp. L., § 4207. There is hence no basis on which the plaintiffs in error in their character as mortgagees can claim any benefit from the subsequent grant to their mortgagor on the principle of estoppel, and no other foundation is discovered.

There is a further difficulty. The case shows that both mortgages were in substance and effect for purchase money. The grants to Drake and the mortgages given were not so many separate transactions. On each occasion the mortgage was given simultaneously with the grant, and Drake's seizin was only momentary. He acquired nothing more than the interests his grantors possessed, and his mortgages attached to nothing which he did not then own. These views find support in the following authorities: 2 Bl. Com., 131 et seq.; 4 Kent's Com., 38 et seq.; id., 173, 174; Tyler on Inf. and Cov., 526 et seq.; *Mayburry v. Brien*, 15 Pet., 21; *Kittle v. Van Dyck*, 1 Sandf. Ch., 76; *Sage v. Cartwright*, 5 Seld., 49; *Sparrow v. Kingman*, 1 Comst., 242; *Durando v. Durando*, 23 N. Y., 331; *Burns v. Thayer*, 101 Mass., 426; *Perkins v. Davis*, 120 Mass., 408; *Pomeroy v. Latting*, 15 Gray, 435; *Brimmer v. Proprietors etc.*, 5 Pick., 131; *Martin v. Martin*, 1 Comst., 473; *Smith v. Townsend*, 25 N. Y., 479; *Purdy v. Huntington*, 42 N. Y., 335; *Jackson v. Littell*, 56 N. Y., 108; *Shirras v. Caig*, 7 Cranch., 34; *United States v. New Orleans R. R.*, 12 Wall., 362; *Hauft v. Duncan*, 40 Iowa, 254.

The mortgage to plaintiffs in error never attached to

anything beyond the estate Drake possessed when he gave it, and as he then had nothing except what they granted to him, namely, their respective undivided interests, it reached no farther than those interests. The seizin being instantaneous there was no chance for any distinct right to intervene and expand the lien. See authorities last cited.

It would be strange if the general terms of the first mortgage, and the subsequent grant by the three heirs could have the effect to convert such first mortgage given only to secure plaintiffs in error for their shares, and by one having no interest beyond such shares, into a lien on the other shares, and not only so, but a lien having preference over a purchase money mortgage made on the sale of such other shares. Yet this is the very ground taken. The law will not tolerate such injustice. *Beall v. White*, 94 U. S., 382.

Some other points are mooted, but they do not seem to be even plausible. They will not be discussed.

No error is found in the record, and the judgment should be affirmed with costs.

The other Justices concurred.