Randall *et al. v.* Lower.

Filed Nov. 14, 1884.

---

No. 10,975.

## RANDALL ET AL. *v.* LOWER.

MORTGAGE.—*Estoppel.—Covenants.—After-Acquired Title.*—Where a grantor of land receives back, in the same transaction, a mortgage for the purchase-money, the covenants in the mortgage operate only upon the estate acquired from the mortgagee, and do not operate upon an after-acquired title.

SAME.—*Foreclosure.—Vendor and Vendee.—Partition.—Judgment.—Res Adjudicata.—Estoppel.—Purchaser Pendente Lite.*—A. died intestate, seized of lands, leaving a wife and four children surviving him. The widow remarried, and then one of the children executed a deed to B., purporting to convey an undivided one-fourth of the lands with full covenants and took a mortgage of the same share, with like covenants, to secure the purchase-money, and then assigned the mortgage to L., who brought suit against B., who had also acquired the share of another child, to foreclose. Pending that suit, in 1878, R., who had acquired the share of another child, sued B. and the widow, then wife of B., and the remaining child for partition, and the lands being adjudged indivisible, they were sold by order of the court, and R. became the purchaser. Afterwards, in Oc-

tober, 1879, there was judgment in the foreclosure suit directing the sale of one-fourth of the land, under which L. purchased and received a deed. *Held,* that L. became seized of an undivided one-fourth of the lands. *Held,* also, that L.'s decree, in the suit pending when R. purchased was an adjudication which bound R., and estopped him from questioning the fact that the mortgage bound one-fourth of the lands.

From the Noble Circuit Court.

*P. A. Randall* and *W. J. Vesey*, for appellants.

*A. A. Chapin* and *R. P. Barr,* for appellee.

ELLIOTT, C. J.—The material questions arise on the special finding. That finding is, substantially, this: Achilles Eddy died the owner of the land in controversy, leaving a widow and four children; in 1869 the widow married Luman Lobdell; in August, 1874, Myron G. Eddy, a son of Achilles Eddy, conveyed a one-fourth interest in the land to Lobdell, and Lobdell executed a mortgage to his grantor for the purchase-money; both the deed and the mortgage contained full covenants; at the time the conveyance was made Myron G. Eddy had no interest in the land except that inherited from his father and the contingent interest as the possible heir of his mother; in March, 1873, Eugene Eddy, another son, conveyed his interest, describing it as one-fourth, to Lobdell; in April of that year Myron G. Eddy assigned two of the purchase-money notes to the appellee, who instituted a suit of foreclosure against Lobdell and wife in September, 1878, and in which suit Lobdell filed an answer; pending that suit Harriet Eddy, a daughter of Achilles Eddy, conveyed her interest to the appellant; in 1878 an action for partition was commenced by the appellant against Lobdell and wife and George Eddy, a son of the intestate; the appellee was not a party to that suit; the foreclosure suit came on for trial in October, 1879, and a judgment was rendered foreclosing the mortgage on one-fourth of the land, and directing its sale; a sale was made and a deed was executed by the sheriff conveying it to the appellee; the judgment in the partition suit was that the land was indivisible, and a sale was ordered, at which

Randall, the appellant, became the purchaser; the widow Sarah died without having conveyed her interest. The conclusion of law stated is that the appellee, Lower, by virtue of the title derived from the deed of the sheriff, became the owner of one-fourth of the land, and that the appellant became the owner of three-fourths by virtue of the title acquired under the partition proceedings.

The general rule is that where the mortgage contains full covenants, and the mortgagor has at the time no title, or has a defective title, but subsequently acquires a perfect title, it will enure to the benefit of the mortgagee. 1 Jones Mortg., section 68; Thomas Mortg. 17; Rawle Cov. (4th ed.) 440. Our own decisions have adopted and applied this general rule to cases of conveyances by deed, and there is no reason why the rule should not apply to grants by way of mortgage. *King* v. *Rea*, 56 Ind. 1; *Shumaker* v. *Johnson*, 35 Ind. 33, *vide* opinion p. 38; *Burton* v. *Reeds*, 20 Ind. 87, see opinion p. 93.

The principle which underlies the rule is the same whether the instrument be a deed or a mortgage. 3 Washb. R. P. (4th ed.), pp. 107, 118. The question here is whether the general rule applies, and whether it so operates as to fasten the mortgage upon the interest in the land owned by the mortgagor at the time it was executed, and also upon the estate subsequently vested in him by the death of his mother.

The principle upon which the general rule rests is that of equitable estoppel, and such an estoppel can never exist unless good conscience and equity require it in order to promote justice. Justice is not promoted, nor good conscience obeyed, by permitting a grantor, who has assumed to convey land to which he has no title, to insist that his grantee, in mortgaging the land back to him for the purchase-money, fastened the lien, not only upon the estate conveyed by the grantor's deed, but also upon an estate subsequently acquired and from another source. It is not difficult to perceive and mark the difference between such a case and one in which the mortgagee

is not the grantor of the estate assumed to be mortgaged. A mortgagee who grants the property to the mortgagor, and yet has no title, breaks his own covenant, and by his own act, in assuming to grant what he does not own, lessens the estate which his grantee assumes to mortgage back to him, and is himself primarily in the wrong. It is covenant against covenant, and breach by both covenantors, but by one with fault, and by the other without fault. If the grantor had conveyed the estate he assumed to convey, there would have been no default on the part of the mortgagor; that there was default is due to the fact that the mortgagee, in granting the estate, did not grant what he professed to do, and thus misled the mortgagor. The latter would have owned all he assumed to mortgage if the mortgagee had not himself been in fault. The mortgage was made upon the faith of the representation contained in the deed of the mortgagee, and he can not reap any benefit from covenants, which his own representation justified the mortgagor in making, by extending the covenants to an estate derived from another source. It is not consistent with good conscience for a grantor to grasp after-acquired property where he himself assumed to vest all the title which his mortgagor undertook to grant back to him by way of mortgage to secure the purchase-money; it is enough that the former gets back the estate he assumed to convey.

Our conclusion, that equity will not allow a grantor who receives back, in the same transaction, a mortgage for the purchase-money, to extend the lien of the mortgage to after-acquired property, is supported by the adjudged cases, but the decisions are placed upon somewhat different grounds. In the case of *Brown* v. *Phillips*, 40 Mich. 264, the court, in speaking of the effect of a purchase-money mortgage, said: "On each occasion the mortgage was given simultaneously with the grant, and Drake's seisin was only momentary. He acquired nothing more than the interests his grantors possessed, and his mortgages attach to nothing which he did not then own." The authorities cited by the court, among them

2 Blacks. Com. 131, 4 Kent Com. 38, Tyler on Infancy and Coverture, 526, taken in connection with the language of the opinion, indicate that much stress was laid upon the doctrine of instantaneous seisin, and it may be that where, as with us, the mortgage passes no title, but merely creates a lien, the seisin is more than instantaneous. This, however, does not weaken the force of the ruling; for the clear implication is that, so far as the quantity of the estate is concerned, both grantee and grantor meant that it should instantly pass back by way of mortgage to the grantor, and in this sense the seisin was instantaneous. It is difficult, if not impossible, to conceive that in such a transaction the parties intended that any other estate than the one momentarily in the grantee should go to the grantor by way of mortgage. In discussing a question much the same as that here under discussion, the Supreme Court of New Hampshire said: " The defendant *sold* the land; the plaintiff has only *pledged* it. For the sale, the defendant received a consideration. If his title was not perfect, he is bound to indemnify. It is he, and not the defendant, who is answerable for all defects and incumbrances which existed at the time of his deed. The seller, and not the purchaser, is bound to make good all deficiencies in the quality and title of the thing sold. If the purchaser instantly pledges the property to him, he pledges only what he has received from him, and is answerable for no defect in the property which existed before the sale." *Haynes* v. *Stevens,* 11 N. H. 28. The same view was expressed in *Smith* v. *Cannell,* 32 Maine, 123, where it was said: "As between these parties, the purchaser really pledges nothing but the interest, which he obtained under the deed to him, and is answerable to him for no imperfection in the title, existing before the conveyance." It is settled by the decisions of courts of high authority that the covenants in the mortgage will not estop the mortgagor from suing on the covenants of the deed. *Hubbard* v. *Norton,* 10 Conn. 422; *Connor* v. *Eddy,* 25 Mo. 72; *Lot* v. *Thomas,* 2 N. J. 407; *Sumner* v. *Barnard,* 12 Met. 459; *Haynes* v.

*Stevens, supra.* If this be sound law, as it clearly is, then it would be illogical to affirm that the same covenants which were not strong enough to restrain an action on the deed were yet strong enough to carry to the mortgagee an after-acquired title.

The only case we have been able to find that at all opposes the doctrine of the authorities we have cited is that of *Hitchcock* v. *Fortier*, 65 Ill. 239. The question is not much discussed in that case, nor are any authorities at all referred to, and we are unwilling to sanction the doctrine it declares. We prefer to follow the cases approved by an author who deservedly occupies a high place among law writers, and who says of one ot the cases we have cited: "And the law as thus stated is supported both by reason and authority." Rawle Cov. 451. The court in *Hitchcock* v. *Fortier, supra,* assume the very point in issue; that this is so, appears in the following extract: " The only question is, whether the alleged debt from McFadden to Fortier is a valid debt. If it is, Fortier is entitled to the same benefit from his mortgage as any other mortgagee, and can claim the application of the same rules of construction that would be applied to any other mortgage." It is evident from what has been said and from the authorities cited, that this is, we respectfully submit, radically erroneous. By all the analogies of the law, upon all the principles of equity, a covenantor in a deed occupies toward one who mortgages back the land granted to him a position very different from that occupied by a mortgagee who did not undertake to create title in his mortgagor. Rawle Cov. 451, auth. n. There is another assumption in *Hitchcock* v. *Fortier, supra,* that can not be made good. An after-acquired title does not in all cases where there are covenants pass to the grantee or mortgagee; it passes only when equity requires, or when the parties intended it should pass. Rawle Cov. 445., auth. n. Equity does not require that a grantee should mortgage back a greater estate than that his grantor professed to vest in him, nor can it be implied that a grantee

in mortgaging back the land for the purchase-money intended to grant an estate which the deed assumed to grant, but which it did not vest in him. Bigelow Estop. 297, 333. It follows from what we have said that the judgment of the trial court can not be sustained upon the theory that an after-acquired estate vested in the mortgagee by force of the mortgage alone.

The next question which requires attention is as to the effect of the decree in the foreclosure suit. In order to understand the matter properly, it is necessary to group the facts relevant to this inquiry together. The mortgagee, at the time of the execution of the mortgage, had a direct interest in the land as the heir of his father, and he had also some interest—it is not material to inquire what—contingent upon the death of his mother; the suit to foreclose the mortgage was brought in September, 1878, and was pending at the time the partition suit, out of which the appellant's rights grow, was begun; the decree in the foreclosure suit fixed the interest of the mortgagee as an undivided one-fourth, in accordance with the description in the mortgage and the prayer of the complaint, and in that suit, upon the issue made by Lobdell's answer, was tried the right of Lobdell to damages for a breach of covenant.

It appears from these facts that the appellant was a purchaser *pendente lite*, and he was, therefore, bound by the decree in the pending suit. It is perfectly well settled that such a purchaser is bound by the decree or judgment in which the pending litigation results. Wade Notice, section 337; *Stout* v. *Lye*, 103 U. S. 66; *Eyster* v. *Gaff*, 91 U. S. 521; *Daniels* v. *Henderson*, 49 Cal. 242.

We are not unmindful of the rule that it is only one who is a purchaser from a party or a privy to the pending litigation that is bound by the decree. As to the interest of Lobdell and of Myron G. Eddy, the appellant must claim to have purchased from parties to the suit then pending, for he could get the interest in no other way than through them.

Lobdell was actually a party, and the material question involved in the foreclosure suit was the extent of the interest covered by the mortgage. As to the appellee, Myron G. Eddy stood as a privy in contract and in estate, because he had assigned a mortgage granting one-fourth interest in the land. It was on this assignment that the right of the appellee to maintain his suit wholly depended. There was not a more important question in the case. As to the appellee, Myron G. Eddy was conclusively estopped to aver that the mortgaged estate was not what his deed and the mortgage represented it to be; so, also, are his privies in blood, contract and estate. The assignment of the mortgage carried as against Eddy all the estate it purported to grant. The appellant can not secure more than three-fourths of the land without securing all of Lobdell's interest and part of Myron G. Eddy's; so that to hold more he must claim through them. Both Lobdell and Eddy had covenanted that the mortgage covered one-fourth of the land, and whether it did or not was a question necessarily involved in the issue in the foreclosure suit, for, without a decision upon that point, it was impossible to frame a decree for the sale of the land. As the appellant claims through both of these persons, that decree, if binding upon them, is binding upon him.

We think that there can be no doubt that the decree bound Eddy as the assignor of the mortgage and Lobdell as the mortgagor. A controlling purpose in a suit to foreclose is to obtain a decree to sell the whole estate embraced in the mortgage. *Williams* v. *Bankhead,* 19 Wall. 563; *Hagan* v. *Walker,* 14 How. 29; Story Eq. Pl. 197; 4 Kent Com. 184; Bliss Code Pl. 96.

The object of the provisions of our code concerning parties and decrees is to settle in one comprehensive action all conflicting claims of title, and adjust all rights and equities in the property. *Masters* v. *Templeton,* 92 Ind. 447; *Woodworth* v. *Zimmerman,* 92 Ind. 349; *Hose* v. *Allwein,* 91 Ind. 497;

*Fitzpatrick* v. *Papa*, 89 Ind. 17, *vide* p. 21 ; *Ulrich* v. *Drischell*, 88 Ind. 354 ; *Ætna Life Ins. Co.* v. *Finch*, 84 Ind. 301 ; *Harrison* v. *Phœnix Ins., etc., Co.*, 83 Ind. 575 ; *Davenport* v. *Barnett*, 51 Ind. 329 ; *Greenup* v. *Crooks*, 50 Ind. 410 ; *Ewing* v. *Patterson*, 35 Ind. 326.

As the question of what property the mortgage covered and what should be decreed sold was involved in the issue, it was conclusively adjudicated, and, under the rule laid down as early as *Fischli* v. *Fischli*, 1 Blackf. 360 (12 Am. Dec. 251), the matter is forever at rest. The rule to which we have referred is repeated in most of the cases cited, and has been again and again reiterated. *State, ex rel.*, v. *Krug*, 94 Ind. 366 ; *Rose* v. *Rose*, 93 Ind. 179, *vide* p. 185 ; *Behrley* v. *Behrley*, 93 Ind. 255 ; *Bake* v. *Smiley*, 84 Ind. 212, *vide* p. 223 ; *Hays* v. *Carr*, 83 Ind. 275 ; *Sauer* v. *Twining*, 81 Ind. 366 ; *Green* v. *Glynn*, 71 Ind. 336 ; *Crosby* v. *Jeroloman*, 37 Ind. 264. It would unsettle titles, and produce endless confusion to permit parties to assert in a collateral proceeding, that a decree directing the sale of an undivided one-fourth part of a parcel of land was erroneous, for the reason that the court had authority to direct the sale of only one-sixth or one-seventh. All such matters are concluded by the decree ; if it were otherwise there would be little force in decrees and small value in judgments.

We are satisfied that the judgment below stands upon the general principle we have just discussed, and is right.

The court permitted the appellee to correct the description of the land mentioned in his complaint, and also permitted a corresponding correction in the interlocutory order and in the report of the commissioners. There was no error in this, as is expressly ruled in *Randles* v. *Randles*, 63 Ind. 93.

Judgment affirmed.

Filed Nov. 14, 1884.