JOLIET FEDERAL SAVINGS AND LOAN ASSOCIATION, Plaintiff-Appellee, *v.* BLOOMINGTON LOAN COMPANY *et al.,* Defendants-Appellants.

(No. 68-77; 

Third District—December 10, 1970.

*Rehearing denied January 11, 1971.*

STOUDER, J., dissenting.

Joseph I. Adler, of Chicago, and Cirricione & Penn, of Joliet, for appellants.

Robson, Masters, Ryan, Brumund & Belom, of Joliet, and Sidney Z. Karasik, of Chicago, for appellee.

Mr. PRESIDING JUSTICE RYAN delivered the opinion of the court:

The appeal here by Bloomington Loan Company, a junior mortgage holder, is from a decree of foreclosure of the Circuit Court of Will County entered April 4, 1968, in favor of Joliet Federal Savings and Loan Association who is the holder of the first mortgage and the one bringing the foreclosure action. In response to the complaint for foreclosure, Bloomington filed its affirmative defense, counterclaim, motion for an accounting and motion for judgment, all of which the trial court struck on plaintiff's motions. The matter then proceeded to hearing. At the conclusion of the trial, Bloomington and defendant, Shirley Carlton, by leave of the court, filed an affirmative defense pleading usury which defense was answered by the plaintiff. The court then entered a decree of foreclosure as prayed by the plaintiff. This appeal is taken by Bloomington alone from the court's order striking its original affirmative defense, counterclaim and motion for accounting and judgment as well as from the trial court's finding and decree of foreclosure.

In the stricken affirmative defense and counterclaim Bloomington alleged that its statutory rights as a junior mortgagee had been violated by the plaintiff in refusing to meet the demand of Bloomington that plaintiff furnish Bloomington with information as to any delinquency in the first mortgage. Bloomington claims entitlement to this information as a matter of right under Chapter 95, Section 63, Illinois Revised Statutes, 1963, which reads:

"Any person who has a mortgage lien upon any land against which there exists a prior mortgage may pay any interest or any installment of the principal or interest which may be in default upon any such prior mortgage and all such sums so paid shall become a part of the debt secured by such junior mortgage, shall bear interest from date of payment at the same rate as the indebtedness secured by such prior mortgage and shall be collectible with, as a part of and in the same manner as the amount secured by such junior mortgage."

Bloomington claims that the failure of plaintiff to furnish the requested information frustrated its attempts to cure the delinquency. The stricken pleading concludes with an allegation of Bloomington's desire and offer to cure any delinquency and a prayer for an accounting as to the amount due so that the necessary payment could be made. The counterclaim continues with an assertion that plaintiff's conduct in refusing to furnish the requested information was willful and prays for punitive damages and attorney's fees.

The affirmative defense alleges that the President of Bloomington visited plaintiff's premises and requested information concerning the delinquency of the first mortgage and was denied this information by an officer of the plaintiff corporation. It is further alleged that Bloomington repeated its request in a letter addressed to the plaintiff which was never answered. Thereafter, plaintiff commenced the foreclosure proceeding. No cash tender was ever made by Bloomington at any time. It claims a tender was impossible, however, because of plaintiff's refusal to furnish the requested information.

We have examined the cited statute and considered the arguments of plaintiff and defendant on this point and conclude that the trial court properly dismissed defendant's affirmative defense, counterclaim, motion for an accounting and motion for judgment. To so rule, however, is not to indicate approval of plaintiff's conduct in refusing to furnish the requested information. Plaintiff admits to a lack of "business courtesy" and we concur in that admission. It is such conduct that encourages persons to resort to litigation which might otherwise have been avoided. On the other hand, plaintiff's conduct does not constitute a defense to this complaint for foreclosure.

■■ The statute creates no positive duties on the part of the first mortgagee to furnish information to anyone or to do anything else. It merely makes clear the rights of the junior mortgagee in the event that payments are made as authorized by the statute. The courts cannot supplement and expand statutory enactments where the legislature has not seen fit to act. The cited statute, which is neither ambiguous nor unclear, simply does not extend as far as defendant would have us take it.

■■ The junior mortgagee was not helpless in this case. It could have obtained the information after the foreclosure proceedings were instituted by simply invoking discovery procedures or by written interrogatories. It could then have proceeded to pay off the amounts in default under the senior mortgage and effectively have prevented foreclosure. If it had desired to act before foreclosure was instituted, it would have tendered sufficient funds to pay the defaults accompanied by a statement to the first mortgagee that "only the amount in default should be retained with the residue returned to the junior mortgagee." While we believe that a senior mortgagee should advise a junior mortgagee of the amount in default, we do not believe it is proper under the statutes and as a matter of equity to conclude that a junior mortgagee has the absolute right, in the event the senior mortgagee fails to so advise a junior mortgagee, to set aside foreclosure proceedings if the junior mortgagee does nothing to prevent the foreclosure proceedings than was pursued in the cause before us.

■■ As stated above, the affirmative defense of usury was pleaded by defendant, Bloomington, and defendant, Shirley Carlton, by leave of court at the conclusion of the trial and has been raised on this appeal by the sole appellant-defendant, Bloomington. The mortgage loan called for a 6% rate with a 1% penalty to be added on upon default. At the time of the loan, the maximum rate authorized by law was 7%. (Ill. Rev. Stat. 1961, ch. 74, par. 4.) Hence, even with the late charge, the combined rate did not exceed that authorized by law. Defendant argues, however, that plaintiff was compounding interest monthly whereby the true annual rate exceeded 7%. The mortgage note in this case called for monthly payments. When a monthly payment came due and was missed, the amount of unpaid interest was properly added to the loan balance. The mortgage note provided that: "* * * payments shall be applied first to interest on the unpaid balance at the rate herein specified and then to principal. The said interest for each month shall be added to the unpaid balance on the first day of said month at the rate of one-twelfth (1/12) of the annual interest rate and shall be calculated upon said unpaid balance due as of the last day of the preceding month." This is not true compounding of interest. No Illinois case or statute has been cited which prohibits the practice in this case and we know of no public policy argument against it.

To the contrary, Illinois Revised Statutes, ch. 32, par. 800, provides that "no interest * * * or interest on such interest * * * which may accrue to an association under the provisions of this Act, shall be deemed to be usurious." By Section 703 of the same Act, this law is made applicable to Federal Savings and Loan Associations.

■■ The defendant contends that Congress by enacting the Federal Home Loan Bank Act (Title 12, USCA, Chap. 11, Sec. 1425) has nullified the effect of the above statutes so far as the same are applicable to Federal Savings and Loan Associations. This act of Congress relates to membership in the system and does not prohibit the state from exempting a Federal Savings and Loan Association from the operation of its usury laws. No other question concerning the validity of the statutory exemption has been raised by the defendant and the defendant has failed to show any other reason why the statutory exemption is not applicable in the present case.

Defendant further objects that the interest rate was increased in a usurious way by other bookkeeping devices, that is, by adding $31.50 to the balance due each month under the tax and insurance escrow agreement that mortgagors had made. This was their contract. When they failed to pay as agreed, plaintiff was entitled to charge the agreed amount against the principal balance and, also pursuant to the agreement, to charge interest on the amount past due and unpaid.

■■ Defendant further objects that the rents collected should have been applied directly against the loan balance instead of holding them in a separate account. No rents were collected by mortgagee until after the foreclosure suit was filed. Plaintiff's handling of the rent collections was essentially the same as that of a receiver in possession. Nothing in the mortgage documents, including the assignment of rents, made it mandatory that mortgagee apply the rent receipts to immediate reduction of the mortgage debt. So long as the rent receipts were not misapplied, the mortgagee acted properly in segregating the proceeds and using them to pay expenses. There can be no argument, however, that like a receiver, the mortgagee had a duty to account for these receipts and disbursements and that insofar as they were not used to pay expenses or to satisfy the debt or a deficiency arising from a foreclosure sale, that the balance, if any, would belong to mortgagor. Defendant's objection to the itemized expenses is not well taken. The claimed expenses were substantiated by sworn testimony. Defendant offered no countervailing evidence and did not cross-examine plaintiff's witness to bring out any evidence that the expenses were either unreasonable or unnecessary.

Finally, defendant objects to the allowance of attorney's fees and costs for the same reasons set forth in the affirmative defense. As we have here-

inabove ruled that those reasons are not meritorious, the same ruling applies to this objection.

There being no other points at issue, the decision of the trial court in this case is accordingly affirmed.

Judgment affirmed.

ALLOY, J., concurs.

Mr. JUSTICE STOUDER dissenting:

I disagree with the result reached by the majority of the Court. I cannot subscribe to the view that the operation of par. 63, ch. 95, Ill. Rev. Stat. 1963, may depend on whether the senior mortgagee decides to be courteous.

It requires no citation of authority to support the general proposition that the law does not favor mortgage foreclosures. Equitable principles have generally been applied to mortgage foreclosures in an effort to protect the rights of all parties concerned.

Concededly, par. 63, ch. 95, Ill. Rev. Stat. 1963, is designed to avoid the necessity of mortgage foreclosure. Such par. is a legislative recognition that to permit a junior mortgagee to cure delinquencies of principal and interest due on a senior mortgage protects both the junior mortgagee and mortgagor without detriment to the security interest of the senior mortgagee.

If a junior mortgagee has a right to cure delinquencies, such right by necessary implication and by the plain purpose of the statute, includes the right to ascertain whether a delinquency exists and if so the amount thereof. Indeed the plaintiff does not dispute the right of the junior mortgagee to inquire but rather argues that it has no duty to respond. This is to me a fallacious argument and finds no support either in the statute or reason. Emphasizing the fallacy of such argument is plaintiff's further contention that the defendant junior mortgagee could and should have proceeded to cure the delinquencies under par. 57, ch. 95, Ill. Rev. Stat. 1963. This section provides in substance that for a limited time after foreclosure proceedings are instituted, the mortgagor or his successor in interest may cure delinquencies by payment thereof together with costs and attorney's fees. Sec. 57 and 63 *supra*, establish a legislative policy which recognizes that temporary defaults may be remedied without injustice to the security holder. If the delinquencies are cured under par. 63 no question of payment of attorney's fees or costs arises. Consequently it is of substantial benefit for the junior mortgagee to be able to cure the delinquencies under par. 63 prior to the institution of foreclosure proceedings.

According to the pleadings of the defendant Bloomington Loan, the plaintiff refused to respond to a personal inquiry and neglected to respond

to a certified mail request seeking information concerning the amount of any delinquency. Plaintiff's negative response was unconditional and was in fact and legal effect a refusal by the plaintiff to recognize the right of the defendant to cure such delinquencies as may have existed. The statute does not vest such mortgagee with discretion to recognize the right of a junior mortgagee to cure a delinquency and as a result which approves of such mortgagee's arbitrary discretion is not in accord with the statute.

In my view a senior mortgagee may not by his conduct prevent a junior mortgagee from remedying or curing a default in the senior obligation where, as in the case at bar, a senior mortgagee refuses without justification to indicate the amount of any delinquency. The right of a junior mortgagee to cure any delinquency is not terminated but merely suspended or delayed until such information is provided. Accordingly I believe that the facts set forth in the affirmative defense and motion for accounting did constitute a defense to the mortgage foreclosure and consequently the pleadings should not have been stricken.

The suggestions of the majority concerning what a junior mortgagee should do are curious and to me demonstrate the unsoundness of the result reached. First the majority suggests that a junior mortgagee should send the senior mortgagee a generous amount of money with the request that whatever was not needed to bring the loan up to date should be returned to the junior mortgagee. This is a curious application of the principles of tender and at best may be described as a unique procedure without statutory basis. More importantly such a suggestion is inconsistent with the main holding of the majority namely that the section imposes no duties on a senior mortgagee. Also the majority suggests that after foreclosure proceedings are filed the junior mortgagee can and therefore is compelled to resort to discovery procedures to ascertain the amount of delinquencies. The issue involved in this case is the sufficiency of defendant's pleadings and I am aware of no rule which authorizes the determination of such sufficiency on the basis of what could or should have been ascertained by discovery procedures. Usually the reverse is true. Discovery is only appropriate if based on pleadings.

In summarizing this aspect of the case it appears to me that rewarding a senior mortgagee for its wrongful conduct is contrary to equitable principles. On the basis of the pleadings of defendant which were stricken, the court ought to have required that the senior mortgagee be required to accept an amount equal to the delinquent payments of principle and interest. On the basis of the pleadings and statute the amount of such delinquency should have been determined and the defendant afforded a reasonable time to make such payment. If payment was not made within such time by the junior mortgagee then foreclosure would be appropriate.

Lastly I believe that the rents received by the plaintiff under the assignment in the mortgage should have been applied to the indebtedness as and when received. (*Hitchcock v. Fortier*, 65 Ill. 239, *Branch v. Barnes*, 19 Ill.App.2d 472, 154 N.E.2d 337.) The plaintiff did not receive such rents as a receiver and I am not aware of any equitable principle that requires or authorizes the mortgagee to be treated like the receiver. Plaintiff apparently received amicable possession of the real estate and its request for the appointment of a receiver was never acted on. Plaintiff's receipts of rents was independent of the foreclosure proceeding. Consequently in my view it was obligated to apply such rents to the underlying obligation.