OF THE

## STATE OF NEW JERSEY,

## ON APPEAL FROM THE COURT OF CHANCERY

### AND PREROGATIVE COURT,

JUNE TERM, 1881.

SAMUEL BINGHAM, appellant,

*v.*

CHARLES KIRKLAND et al., respondents.

1. T. H. made a deed to L. H., in 1867, which was recorded. L. H. made a deed back to T. H., in 1868, which was never recorded. T. H. made a mortgage upon the same property to B., in 1871, which was recorded. Afterwards, L. H. made a second deed, purporting to convey again this property to T. H., in 1872. In 1874, T. H. made a mortgage to W. W. P.—*Held,* that the mortgage to W. W. P. was a superior encumbrance, the last mortgagee having no actual notice of the mortgage to B., or the deed to T. H., made in 1868.

2. Where one who has no title makes a mortgage, which is recorded, and subsequently acquires title, a subsequent purchaser is not chargeable, under our registry acts, with constructive notice of the mortgage.

3. The doctrine of title by an estoppel binding the second mortgagee, cannot be invoked in this case by B., inasmuch as T. H. already had title when he gave the mortgage to B., and the second deed to T. H. was nugatory

229

4. T. H. was in possession of the premises before he made his deed to L. H., in 1867, and remained in possession down to the time of making the mortgage to W. W. P., in 1874.—*Held*, that his possession was not notice to W. W. P. of the title of T. H., under the unrecorded deed of 1868, so as to require W. W. P. to search against the acts of T. H. from that time.

5. When a vendor remains in possession after making his deed, a purchaser from his grantee has a right to rely upon the deed of the vendor in possession, as a complete answer to any inquiry which his possession would suggest.

6. The possession which suggests inquiry to a purchaser, and is notice to him of the possessor's interest in the land, is a possession existing at the time of the purchase.

——

This is an appeal from an order advised by Vice-Chancellor Van Fleet dismissing a cross-bill.

It is a decree in a suit originally brought by Charles Kirkland, trustee of Catherine A. Mower, to foreclose a mortgage upon forty acres of land in Bergen county, made by Thomas Howland and wife to Catherine F. Dana, and by her assigned to Kirkland.

In the course of this suit, a conflict arose as to the relative positions of two mortgages upon a part of the property covered by the Kirkland mortgage.

One of these mortgages was made by Howland and wife upon six acres of the forty-acre tract, to a Mr. Bailey, who assigned it to Bingham. The other mortgage was made by Howland upon five and a-half acres of the six acres aforesaid, to William Walter Phelps. The original suit was arrested at this point of its progress, until Mr. Bingham could file his cross-bill to determine the question raised as to the priority of these encumbrances. In the bill so filed by Mr. Bingham, he prays that his mortgage, as to the execution and record thereof, may be decreed to be prior in time to the mortgage to Mr. Phelps, and that the complainant may be entitled to priority of payment out of the proceeds from the sale of the mortgaged premises. The admitted facts which appear in the cause, and upon which the question of the relative positions of these instruments rests, are as follows:

Howland, who subsequently made both these mortgages, in

1867 made a deed of the premises afterwards mortgaged to one Louisa Hudson, which deed was duly recorded.

In 1868, Louisa Hudson reconveyed the subsequently mortgaged premises to Howland, but this deed back to Howland was never recorded.

In July, 1871, Howland, having never recorded this deed back to him, made the mortgage now held by Mr. Bingham, which was recorded in August, 1871.

For some reason, Louisa Hudson, after having conveyed back the property to Howland by the deed of 1868, which was not recorded, made a second deed, in August, 1872, of the mortgaged premises to Howland. After this, in May, 1874, Howland made the mortgage to Mr. Phelps.

On the point that the respondent's mortgagors are estopped to deny their own title, *Mr. S. B. Ransom* cited—

*2 Smith's Lead. Cas. (5th Am. ed.) 581, note; Decker* v. *Caskey, 2 Gr. Ch. 446; Kellogg* v. *Wood, 4 Paige 578.*

That a party claiming through another is estopped by that which estopped that other, respecting the same subject matter. *2 Smith's Lead. Cas. (5th Am. ed.) 589, note; Taylor* v. *Needham, 2 Taunt. 282; Trivian* v. *Lawrence, 1 Salk. 276; Rawlins's Case, 4 Coke 52; Weale* v. *Lower, Polexf. 61; Fairbanks et al.* v. *Williams, 7 Greenl. 96; Carter* v. *Chandron, 21 Ala. 72; Rigg* v. *Cook, 4 Gilman 348; Jarvis* v. *Aikens, 25 Vt. 635; White* v. *Patten, 24 Pick. 324; Johnson* v. *Watts, 1 Jones (N. C.) 228; Bank of Utica* v. *Messereau, 3 Barb. Ch. 567; Douglas* v. *Scott, 5 Ohio 198; Bailey* v. *Trustees of Lincoln Academy, 12 Miss. 177; Philly* v. *Sanders et al., 11 Ohio (N. S.) 490.*

That possession was sufficient notice to put respondent on inquiry. *4 Kent's Com. 179, 7th ed. and notes; Tuttle* v. *Jackson, 6 Wend. 213, 226; Wright* v. *Douglass, 10 Barb. 97; Troup* v. *Hurlbut, 10 Barb. 354; Merritt* v. *Northern R. R. Co., 12 Barb. 605; Fraze* v. *Weston, 1 Barb. Ch. 220, 232; Colby* v. *Kenniston, 4 N. H. 262; Norcross* v. *Widgery, 2 Mass. 508; Eyres* v. *Dolphin, 2 Ball & B. 301; McMahon* v. *Griffing, 3 Pick. 149; Malpas* v. *Ackland, 3 Russ. 273; Bellington* v. *Welch, 5 Binn. 129; Davis* v. *Blunt, 6 Mass. 487; Johns* v.

*Norris, 12 C. E. Gr. 485 ; Howard Ins. Co.* v. *Halsey, 4 Sandf. S. C. 573 ; Pendleton* v. *Fay, 2 Paige 202.*

The law of estoppel makes mortgages on lands acquired after their execution, a lien on said lands, and he was just as much bound to search for such liens as for judgments. *Warburton* v. *Meattox, Morris (Iowa) 367 ; Jarvis* v. *Aikens, 25 Vt. 635 ; White* v. *Patten, 24 Pick. 324 ; Philly* v. *Sanders, 11 Ohio (N. S.) 490 ; Tefft* v. *Munson, 57 N. Y. 97.*

*Mr. G. H. Coffey,* for respondents.

Bingham's mortgage is not a lien, because Phelps had no notice, actual or constructive. *1 Story Eq. Jur. (4th ed.) 396–412 ; Brown* v. *Volkening, 64 N. Y. 76.*

Bingham's mortgage, when recorded, was not a conveyance, and not until the mortgagor took title as between the parties and not as to third parties till they had notice, actual or constructive. *Gillig* v. *Maass, 28 N. Y. 213 ; 4 Kent Comm. 2d ed. 174 ; 1 Story's Eq. Jur. 404 ; Boyd* v. *Mundorf, 3 Stew. Eq. 345.*

Phelps had a right to rely on the record as showing the truth, having no other notice. *1 Story's Eq. Jur. 403.*

A mortgage recorded before the mortgagor has title is void, and is no notice to subsequent *bona fide* purchasers. *N. Y. Life Ins. Co.* v. *White, 17 N. Y. 469 ; Cook* v. *Travis, 20 N. Y. 400 ; 1 Story's Eq. Jur. 396, 397 ; Losey* v. *Simpson, 3 Stock. 246 ; Neligh* v. *Michenor, 3 Stock. 534–5 ; Lathrop* v. *Groten Savings Bank, 3 Stew. Eq. 126, 4 Stew. Eq. 273.*

Mere possession not visible or actual is not a requisite notice. *Cogswell* v. *Stout, 5 Stew. Eq. 240 ; Losey* v. *Simpson, 3 Stock. 246 ; Lathrop* v. *Groten Savings Bank, 4 Stew. Eq. 273 ; Brown* v. *Volkening, 64 N. Y. 76 ; Cook* v. *Travis, 20 N. Y. 400 ; Page* v. *Waring, 76 N. Y. 463 ; Tefft* v. *Munson, 57 N. Y. 97.*

The opinion of the court was delivered by

REED, J.

The question which presses for solution is relative to the construction of our registry acts in regard to their effect upon the rights of these two mortgagees.

The mortgagor, after making a deed from himself to Hudson, which was recorded, and after receiving a deed back to himself, which was not recorded, gave the Bingham mortgage, which was recorded.

After this, he took a second deed from Hudson of the mortgaged property, and afterwards gave the mortgage to Phelps.

It is apparent that at the time when Bingham took his mortgage, the records would have disclosed to a searcher that Howland, who made it, had parted with his title in the premises in 1867, and no deed back to him would have appeared.

So far as Mr. Phelps knew, no title had been reconveyed to Howland until 1872, when the second deed from Hudson to Howland was made, and upon which title deed the loan was made by Mr. Phelps in 1874.

Between 1867 and 1872, then, so far as appeared by the record taken in connection with the deed of 1872, of which Phelps had notice, the title to the mortgaged premises was in Hudson and not in Howland. Between those dates the mortgage had been made by Howland which is held by Bingham, and it had been recorded.

A search, therefore, against the owners of the mortgaged premises during the period when each appeared to have had title, would not have disclosed to Mr. Phelps the existence of the Bingham mortgage.

The counsel for Mr. Bingham contends that although Mr. Phelps had notice of no reconveyance to Howland previous to 1872, and the Bingham mortgage was made previous to that time, yet that being so made and recorded, the deed of 1872 operated to feed an estoppel created by the Bingham mortgage.

The familiar rule invoked is that where one without title conveys with covenants of warranty and subsequently acquires title, he is concluded from asserting that at the time of his conveyance he had no right to make the conveyance. The deduction by appellants' counsel is, that Howland is estopped, by the fact of receiving the deed of 1872, from asserting that he had not title when the Bingham mortgage was made and recorded, and that Phelps, as his privy in estate, is equally bound by the estoppel.

In support of this position there are cases cited in which it has been held that a mortgage made by a person without title, and recorded, is a superior lien upon the property as against a mortgage made by the mortgagor after he acquired title. One of these cases is that of *White* v. *Patten, 24 Pick. 324,* in which case the result is reached upon the ground that the second mortgagee is in privity of estate with the mortgagor, and therefore bound by the estoppel which existed against the mortgagor himself, who had subsequently acquired title.

In the opinion, however, the effect of the registry laws is not mentioned, and the case is treated as involving the doctrine of estoppel only.

The case of *Jarvis* v. *Aikens, 25 Vt. 635,* is decided upon the authority of *White* v. *Patten, supra.*

If the facts in the present case were exactly similar to those in the above and other cases cited in support of the doctrine ruled therein, I could not assent to the result announced.

It would involve a construction of our registry acts which has never obtained in this state.

It would involve a search against every person whom the title in its transmission had ever touched, not merely for the period during which such person held the title, but for a period anterior thereto during which any encumbrance might have been made and still exist. Such a construction of the scope of the constructive notice imputed to a subsequent purchaser by our recording acts, is opposed to the sentiment of the bar of this state as it has existed from the earliest period of their enactment. The system of searching practiced, so far as I know or have been informed, without any deviation, has been to trace the line of record title and search against each owner during the period that he held the title. The titles to the real estate in the state rest upon searches made in conformity to this view.

And it is a sensible view. No one is supposed to convey or incumber property which he does not own. *Non dat qui non habet.*

A person would therefore naturally fail to inquire what some person had done about a property in which he had no interest.

The doctrine of estoppel is based upon the equity of holding a person to the truth of his assertion so far as to prevent an injury which a permitted assertion of its falsity would entail. I am unable to perceive how it can equitably be enforced in a case like this we are considering. When a mortgagee is so negligent as not to require a chain of record title in his mortgagor, by means of which neglect a second mortgagee is induced to loan money, oblivious of the first encumbrance, it would be a mistake to allow such a doctrine to aid the negligent first mortgagee at the expense of a third person without actual notice.

This view receives the support of the supreme court of Pennsylvania in the case of *Calder* v. *Chapman, 52 Penna. St. 359.*

The method of searching which obtains in this state is, as appears by the citations in the opinion in that case, the system which is recognized and practiced there.

The same view was expressed by Chancellor Walworth in the case of *Farmers Trust and Loan Co.* v. *Maltby, 8 Paige 361.*

It also receives the approval of Judge Hare, in his notes to the case of *Le Neve* v. *Le Neve, Lead. Cas. in Eq. (4th Am. ed.) vol. II p. 211, 212.*

But I do not perceive how the appellants can invoke the doctrine of estoppel at all, in this case. Howland did not get title by the deed of 1872. He already had title by the previous deed of 1868. When he made the Bingham mortgage he had title, and therefore the subsequent deed was nugatory, as it purported to operate upon land the title of which had actually passed from the grantor to the grantee.

The last deed, therefore, conveyed nothing to feed the estoppel.

I find nothing in this branch of the case which deprives Phelps of the position of a mortgagee without notice of the Bingham encumbrance.

The counsel of the appellant contends, also, that the possession of the mortgaged premises by Howland had been such as to give Phelps constructive notice of such interest as Howland actually had in the premises. That this would have warned him of the deed to Howland, made in 1868, and so have compelled a search against Howland as the owner from that time, .

which search would have led to the discovery of the Bingham mortgage.

There are a variety of obstacles in the way of an adoption of this view.

First, it is stated in the bill, and in the brief of appellant's counsel insisted upon as a proven fact, that Howland had possession of the property at the time when he made the deed to Louisa Hudson, in 1867, and that he never lost, and that she never took possession of the premises.

Howland's possession, therefore, was one existing at and subsequent to the deed by which he conveyed all his interest to her, down to the time when he made the mortgages in question.

The inquiry which such possession would have suggested was answered by the record. The answer was, that he had no interest in the property, but had conveyed a fee to Louisa Hudson. That answer, a subsequent purchaser had the legal right to rely upon as correct. *Van Keuren* v. *Central R. R. Co.*, *9 Vr. 165; Newhall* v. *Pierce, 5 Pick. 450; Scott* v. *Gallagher, 14 Serg. & R. 333*.

Again, the possession which is claimed to be notice to Phelps was the possession of Phelps's mortgagor, and not that of a third person. The doctrine of notice from possession arises from the notion that possession is *prima facie* seizin.

When a person dealing with a presumed owner, discovers that the possession which naturally follows and co-exists with ownership is openly in some third person, the inquiry naturally is suggested, By what right is he there? Upon his failure to make the inquiry, a purchaser is chargeable with knowledge of the interest of such possessor.

But the possession of the owner is consistent with the fact that he claims to be the owner.

It is not notice that he has burdened his land or conveyed away his title, or that his title is different from what he claims. The purchaser gets what he has, and no more, without regard to his possession. Nor was the possession of the grantor two years before the making of the Phelps mortgage, and before the deed

of 1872, any notice to Phelps that he then held possession by some other title.

A purchaser is not bound to run back through the entire line of grantors, and inquire what the rights of any other person who may have been at any time in possession, may have been. The possession which is notice, is one existing at the time of the purchase. · The abandonment of possession previous thereto is a presumptive determination of the right by which it was held.

The possession of Howland, at the time the Phelps mortgage was made, was consistent with the deed of 1872, and upon the deed Phelps had a right to rely.

In no way can I see how Phelps was affected by Howland's possession.

The result is, that Phelps took his mortgage without notice of the mortgage held by the appellant, and it has priority over the last-mentioned instrument.

The decree dismissing the cross-bill of Bingham is affirmed.

*Decree unanimously affirmed.*