## MARTHA ANN BLAKEMAN

*v.*

## EMMA BOURGEOIS et al.

[Filed February 24th, 1900.]

1. In order to have a right to file a bill to quiet title, &c., under *Gen. Stat. p. 3486*, it is not necessary that the possession of the complainant shall be shown to be adverse in the sense required of a party who claims title by adverse possession against a proven documentary title. The complainant's possession is sufficient to meet the jurisdictional requirements if it is peaceable, and under a claim to the ownership of the premises.

2. Where the acts of possession are proven to have been done without dispute, under a belief and claim on the part of the complainant that she owned the premises, and show an occupation and use of the property for all of the purposes for which its nature enabled it to be used, it is a sufficient exhibition of the peaceable possession under claim of ownership required by the statute.

On bill, answer and proofs.

The bill in this cause is filed under the statute to compel the determination of claims and to quiet titles, &c. *Gen. Stat. p. 3486.* The complainant asserts that she has the peaceable possession of a tract of land lying in Upper township, Cape May county, almost or quite an island, situate between Main, Beach and Middle thoroughfares and Carson's sound, containing about three hundred and forty acres; that the defendant makes a false claim to the ownership of the tract, and prays that the defendant's claim may be declared to be void, and her own title to be perfect.

The defendant denies the complainant's possession and sets out her own title, alleging its validity.

A motion was made by the defendant that an issue be awarded for the trial of the title at law by a jury. It was opened to the court that the complainant claimed under a legal title, *i. e.*, possession for more than twenty years, &c., and following the course of procedure prescribed in *Beale* v. *Blake, 18 Stew. Eq. 669*, the cause proceeded to a hearing, to determine only the preliminary jurisdictional question, the peaceable possession of the complainant at the time when the bill was filed.

The land in question is an island, or nearly an island, and is designated by the witnesses as "the island." It was used for cutting hay and litter in large quantities, generally by the scow load, to rent for a club-house and for gunning and fishing purposes, and somewhat for oystering. There are several gullies which ran into a pond or basin, comprising several acres situated at the inner portion of the island, and in this basin oysters were planted some years ago by the complainant.

The hay which grows on the property is partly salt grass and partly sedge. The land is not fit for farming purposes. The

defendants insist that the complainant had not such peaceable possession of the premises in question; that she is entitled to file a bill to quiet the title. The complainant produced a number of witnesses, and examined them to show the character of the land and of her possession of it. The defendants rested their case without calling any witnesses.

*Mr. Henry M. Snyder*, for the complainant.

*Mr. George A. Bourgeois* and *Mr. Samuel W. Beldon*, for the defendants.

GREY, V. C.

The only question considered on this hearing was whether the complainant had such peaceable possession of the premises in dispute that she was entitled to file a bill to quiet title under the statute. *Gen. Stat. p. 3486.*

That the acts of possession done by the complainant were peaceable—that is, free from all dispute or contention by any one—is undenied. Nothing in the case indicates that the defendants or those under whom they claim have ever had the possession of the premises themselves or that they have ever disputed the complainant's possession in any way.

The defendants insist that the complainant has failed to show such action towards the premises in question as satisfies the statutory requirement that she have the peaceable possession of the lands. They contend that she must prove adverse possession of the whole premises beyond a reasonable doubt, and they cite the case of *Rowland* v. *Updike, 4 Dutch. 101*, as sustaining this proposition.

The case was an action of ejectment in which the complainant had proved a clear documentary title, and the defence rested solely on a claim by adverse possession. The learned Chief-Justice Green declared that in such a situation it was incumbent on the defendants to establish the fact of adverse possession beyond a reasonable doubt. But the rule so laid down is not applicable to the proceeding in this court to show the peaceable

possession which satisfies the statute in cases of this character. In the law court there had been an exhibition of a clear record title, on which final judgment was about to be passed. The refutation of such a showing by proof of ·possession, the chief-justice declared, must show as a fact that it was adverse beyond a reasonable doubt. The statute under which this cause is presented does not require proof that the possession of the complainant is adverse or notorious or that it has the qualities which are necessary to establish a possessary title against a proven paper title. To require a complainant to prove such an adverse possession as the chief-justice had in view in *Rowland v. Updike* would be to force him to prove such a possession as would amount to a title. All that the statute requires is that the complainant shall have peaceable—that is, an uncontested— possession of the premises, claiming to own the same.

What constitutes such a possession of lands must be indicated by the acts of the party claiming to own them. These acts will naturally adapt themselves to the nature of the lands and the uses which may be made of them. In this case the property was incapable of being farmed. It was almost, if not quite, an island, on which grew salt grass and sedge, valuable for hay or litter. Part of it was usable as oyster grounds, on which oysters might be planted for future use. Ducks and other game made it attractive for gunning, and its nearness to the thoroughfare, for fishing, so that it was rentable to city people for a club-house, for those uses. There was no other purpose for which this property could be used. If a person went there to look at it, to see whether any one was claiming ownership in it, he would naturally examine it with relation to those incidents for which it might be used by the claimant. The law implies notice to parties interested in such cases in much the same way, the acts of possession varying according to the nature of the land.

In this case there is no dispute that the complainant claimed the ownership of the lands. She testifies that she entered into possession of the island in 1860, under an assignment of a mortgage upon it, made to her by Robert K. Matlock, attorney for

the mortgage holder, for which she paid a full money considera-
tion. There is no contradiction that such a mortgage was actu-
ally delivered to her, and that she paid a substantial pecuniary
consideration for it. Whether she bought the debt which the
mortgage secured is not clearly shown, but that she took posses-
sion of the island under the mortgage, and claimed and believed
she owned it by virtue thereof, does not seem to be disputed.
After her entry on the island, some time about 1860, she appears
to have dealt with it as her own property. She afterwards,
about 1870, disposed of the mortgage to one Campbell, who held
it for a time, but whether in pledge or as an attempted trans-
mission of title, is not very clear. She received the mortgage
again, however, and, for some years before bringing this suit,
had retained it.

It is insisted that the assignment of the mortgage to the com-
plainant was without assignment of the bond, and that this was
void and an absolute nullity, and *Montgomery* v. *Bruere, 1 South.
*265*, is cited as authority for the contention. The learned Chief-
Justice Kirkpatrick, at the part of his opinion referred to, was
reciting the argument of counsel who contended that such an
assignment of a mortgage was void. On the next page (*266*)
the learned chief-justice gives his own opinion on the matter,
and there declares that even if the form and manner of assign-
ment were defective, yet if the assignee purchased up the debt
and paid his money for it, the answer is conclusive. He further
held that the fact that the writings were delivered to the assignee
and that the mortgage (which was the only security) was assigned
over to him, were abundant evidence of such a purchase, and
that whether the assignment carried the legal estate of the mort-
gagee or not, is immaterial, for wherever the legal estate may
be, it is but a trust for him who hath a right to the money.
*Clark* v. *Smith, Sax. 133*, is also cited by the defendant to sus-
tain the proposition, but in that case there was a release and not
an assignment of the mortgage. In *Devlin* v. *Collier, 24 Vr.
422*, it was held that a mortgagee cannot convey to a third
person the premises as mortgaged, himself retaining the debt in-
tended to be secured. This does not fit the proofs in this case,

for there is no evidence that the former holders of the mortgage debt, whose attorney received the money which the complainant paid for the assignment, retained the debt, nor that after the assignment to the complainant they ever asserted any ownership in the mortgage debt, or were recognized as having retained any interest in it. If any inference were to be drawn from the meagre proofs on the point, it would be that there was a purchase and transfer to the complainant of the whole claim held by the mortgagees. That a mortgagee cannot convey any title in the mortgaged premises separately from the debt, is indisputable, but it is equally well settled that the mortgagee, or holder of the debt secured by the mortgage, may, when that debt has become due and remains unpaid, enter under the mortgage into possession of the mortgaged premises, and hold them until the mortgage debt is paid, either from the rents and profits or otherwise. Further, the statute of limitations expressly declares that if a mortgagee and those under him remain in possession of the mortgaged premises for twenty years after default, the equity of redemption is barred. *Gen. Stat. p. 1978 § 25.*

This reference to the holding of the mortgage by the complainant is not for the purpose of justifying that holding as an efficient step in the title (which question is not involved in this inquiry), but simply to show that the possession of the complainant was that of one claiming to be an owner within the terms of the statute, which is satisfied if the complainant holds peaceable possession, claiming to be owner. Whether rightfully or wrongfully, is a matter to be settled in another forum.

The complainant at, and for many years before, the time of filing her bill in this cause, was dealing with the island as one might do in possession of her own property.

She received rents for a club-house on it, and for the hunting privileges. She cut hay for her own use and sold the privilege of cutting to others, and gave permission to yet others. She planted oysters in the low place on the island which she called the basin, and in short, used it for all the purposes above named, either by herself or by her tenants or licensees. She is supported in this proof by all the other witnesses who testify on the point,

save that the witness Campbell, who is quite an old man, appears to contradict himself several times as to dates. There was nothing appropriate to the lands which could have been done to indicate its actual possession and use that the complainant did not do. The club-house was a large and substantial building. The lessees used it at various seasons through the year without dispute of their right. The hunting privilege covered the whole island. The hay cutting was proven to have been done at those places on the island where in the particular season the grass was growing. That is, they cut the crop wherever it grew, and this varied over different parts of the island at different seasons. It was necessary to " scow " it all off the island, so that the cutting was usually done for several rods inland from the edges of the stream, and in great quantity.

The contention of the defendant that the hay cutting, as evidence of possession, must be limited to the extent of the stroke of the scythe, does not recognize the true criterion by which the statute tests the possession of the party claiming to be owner. If the acts of possession are such as an owner would exercise on land of the character in question they are sufficient. Cutting on the premises for hay, not in one place, as if the right were limited to that place, but wherever on the tract the grass happens to grow, is the manner in which one claiming to be owner of the whole tract might be expected to cut. The place of cutting may vary because the crop does. It is shown by the proofs that the cutting followed the crop wherever it was growing on the island. This was the situation of affairs at the time the complainant filed her bill of complaint in this cause.

The evidence submitted sufficiently shows a peaceable possession under a claim of ownership by the complainant, and that being the only question now under consideration, a decree will be advised that the complainant has established that jurisdictional fact, and is therefore entitled to bring this suit to compel the determination of the defendant's claim.