ROBINSON-SHORE DEVELOPMENT CO., A CORPORATION, PLAINTIFF-RESPONDENT, v. WILLIAM R. GALLAGHER AND CATHERINE GALLAGHER, HIS WIFE, *ET ALS.*, DEFENDANTS-APPELLANTS.

Argued December 2, 1957—Decided February 3, 1958.

Mr. *M. Milton Singer* argued the cause for the defendants-appellants, William R. Gallagher and Catherine Gallagher, his wife (*Mr. Paul J. Farley,* attorney; *Mr. Julius Waldman,* of counsel).

Mr. *Albert B. Melnik* argued the cause for the plaintiff-respondent (*Messrs. Hermann, Melnik & Lowengrub,* attorneys).

The opinion of the court was delivered by

BURLING, J. This is an action to quiet title. The Superior Court, Chancery Division, entered a judgment confirming a fee simple title in plaintiff, Robinson-Shore Development Co., 41 *N. J. Super.* 324 (*Ch. Div.* 1956). The defendants, William R. Gallagher and Catherine Gallagher, his wife, prosecuted an appeal to the Appellate Division, but prior to a determination of the merits the cause was remanded to the trial court for determination of the question of whether the legal effect of four deeds in defendants' chain of title may have cured any defects therein. The trial court confirmed the original judgment entered in favor of plaintiff, 43 *N. J. Super.* 430 (*Ch. Div.* 1956), and the entire case

was then determined by the Appellate Division, which court affirmed the judgment entered below. 45 *N. J. Super.* 507 (*App. Div.* 1957).

Pursuant to a petition, this court granted certification to review the cause. 25 *N. J.* 48 (1957).

The dispute here concerns the title to what was once an island, but which is now joined by accretion to the mainland and is located partly in the City of Ocean City and partly in the Township of Upper, Cape May County. The land engendering the litigation comprises some 340 acres. The factual setting is somewhat complex. There are two chains of title to the property in question. One is a common chain of title through which defendants claim ownership of an undivided one-third of the property, the other two-thirds being undisputedly held by the plaintiff. The plaintiff, however, has succeeded to the entire interest of a collateral chain of title, which it contends is superior to the chain through which defendants derive their interest.

By deed in 1842 Somers C. Godfrey became vested with the title to the land in controversy. In 1853 Godfrey mortgaged what was then the island to the firm of Cooper, Henderson & Co., conditioned upon payment of the principal sum of $500 plus interest within six months, which mortgage was duly recorded. This was the inception of the common chain of title which has subsequently devolved to the parties in the enunciated one third-two thirds ratio (hereinafter referred to as Chain I). Subsequently, in 1854, a judgment creditor of Godfrey levied on the premises, and at the execution sale one Lemuel H. Hopkins purchased the property subject to the prior recorded mortgage. The sheriff's deed to Hopkins was duly recorded. The plaintiff presently asserts the paramount position of the Hopkins' chain of title (hereinafter referred to as Chain II).

A heightened interest in the land in question was manifested in the year 1897. On May 18 of that year Mrs. Martha Ann (Gandy) Blakeman entered into a contract to convey the fee to John G. Gandy, Charles G. Miller and David P. Cresswell. On June 18 of the same year one

Emma Bourgeois purchased the same property from John Wahl Queen, administrator *c. t. a.* of the estate of Lemuel H. Hopkins, deceased.

At the insistence of Gandy, Miller and Cresswell, Mrs. Blakeman, on September 24, 1897, initiated an action entitled "Martha Ann Blakeman, complainant, v. Emma Bourgeois, *et als.,*" to quiet her title to the premises in the Court of Chancery. In that suit Mrs. Blakeman exhibited an assignment to her of the Godfrey mortgage by Cooper, Henderson & Co., dated 1860, but unrecorded. She alleged that at the time of the assignment no payments on the mortgage had been made and that she had entered into possession of the premises in 1860 and was in "open, notorious, continued and peaceable possession" up to and including the time of the commencement of the suit, 1897. Concisely, Mrs. Blakeman's claim to the title was grounded upon 20 years' possession under a mortgage which was in default, *Rev.* 1877, *p.* 597, or, in the alternative, 20 years of adverse possession. In 1898 a preliminary hearing was held before Vice-Chancellor Grey upon the jurisdictional question of whether Mrs. Blakeman was "in peaceable possession of lands in this state claiming to own the same" so that she might maintain an action to quiet title. *L.* 1870, *p.* 20, presently *N. J. S. 2A*:62–1 *et seq.; Fitlichauer v. Metropolitan Fireproofing Co.,* 70 *N. J. Eq.* 429 *(Ch.* 1905) ; *Toth v. Bigelow,* 1 *N. J.* 399, 402 (1949).

In spite of the narrow projected issue, above outlined, the inquiry actually pursued was not so limited. In fact, a lengthy hearing was had on the precise nature and extent of Mrs. Blakeman's possession. This broad excursion into the issue of possession may have been precipitated by the counsel for defendants' mistaken notion that the plaintiff was obliged to "prove adverse possession of the whole premises beyond a reasonable doubt." *Blakeman v. Bourgeois,* 59 *N. J. Eq.* 473, at *page* 475 *(Ch.* 1900).

The vice-chancellor rendered his opinion in 1900, holding that Mrs. Blakeman had sufficiently established the jurisdictional prerequisite of peaceable possession under a claim

of ownership, as called for by statute. Apparently, however, no order or decree was ever entered in the cause, nor was the second stage of proving title ever pursued by the parties. This lack of prosecution, in light of the previous arduous efforts of Mrs. Blakeman and the vendees of her realty to clear any conceivable cloud on the property, is best explained by the events transpiring in the interval between the commencement of the litigation and the rendition of the vice-chancellor's opinion.

While the cause was pending Mrs. Blakeman became disenchanted with her bargain and assigned and quitclaimed her interest under the Godfrey mortgage to a corporation, the Ocean City Association, on May 31, 1899. Two days previously, on May 29, 1899, the Ocean City Association had also acquired a one-third interest in the original agreement between Mrs. Blakeman and Gandy, Miller and Cresswell by purchasing an assignment of Gandy's interest. In addition, on May 26, 1899 the Ocean City Association had also acquired a one-quarter interest in the Hopkins title (Chain II) from Emma and George A. Bourgeois, Jr. To further complicate matters Mrs. Blakeman, prior to receiving her purchase money, had tendered a quitclaim deed to Gandy, Miller and Cresswell on August 30, 1897 and they had recorded the deed. One final step completes this phase of the story, in 1902 Miller assigned his interest in the contract to John A. Higgons.

Thus realigned, the parties interested in the disputed property again engaged in litigation. In 1903 the Ocean City Association commenced an action in the Court of Chancery joining as defendants Cresswell and Higgons and as a technical party defendant, Mrs. Blakeman. It sought a decree declaring "null and void" the recorded quitclaim deed of August 30, 1897 from Mrs. Blakeman to Gandy, Miller and Cresswell, upon the ground that it was obtained by fraud; further declaring that Cresswell and Higgons had no right in the premises by virtue of the original agreement with Mrs. Blakeman which was "forfeited and at an end," and requiring Mrs. Blakeman to deliver "a formal and proper

deed of conveyance of her right, title and interest in the mortgaged premises" "which she is willing to do but is prevented from so doing by the record of the said quit-claim deed." Higgons and Cresswell counterclaimed against the Ocean City Association and Mrs. Blakeman, seeking specific performance of the original agreement and to compel Mrs. Blakeman to deliver to them a warranty deed for the premises. The vice-chancellor entered a decree in favor of Higgons and Cresswell. The Ocean City Association and Mrs. Blakeman appealed and in a *per curiam* opinion, the Court of Errors and Appeals concurred in the views expressed in the opinion of the vice-chancellor. *Ocean City Ass'n v. Cresswell*, 71 *N. J. Eq.* 292, 295 (*E. & A.* 1906). As a result of the litigation, Ocean City Association, Cresswell and Higgons each owned an undivided one-third interest in Chain I. Subsequently, Ocean City Association acquired Cresswell's interest, thus establishing the previously referred to one third-two thirds ratio.

With their disputes seemingly at an end, Ocean City Association and Higgons remained in the relationship of co-tenants to the property until 1925. On November 30 of that year Higgons conveyed with covenants of title his one-third interest to Katherine M. Connolly. Katherine M. Connolly, on the same day, gave back a purchase money mortgage with covenants of title to secure the sum of $23,000. On the next day, December 1, the Ocean City Association conveyed its interest to the same Katherine M. Connolly. Since it had in 1925 by quitclaim deeds acquired the remaining outstanding three-quarters of Chain II, Katherine M. Connolly acquired from Ocean City Association two-thirds of Chain I and all of Chain II. Contemporaneously, on December 1, 1925, Katherine M. Connolly conveyed her interests consisting of the entirety of both chains of title to Southern Gardens, Inc. In 1931, after default, Higgons foreclosed his mortgage, joining Katherine M. Connolly and Southern Gardens, Inc., as parties defendant to the foreclosure proceeding. A sheriff's sale was had and Higgons purchased the mortgage interest, receiving a sheriff's

deed containing recitals that it was made pursuant to the foreclosure decree and that the equity of redemption of Connolly and Southern Gardens, Inc., was barred.

By *mesne* conveyances the present defendants succeeded to Higgons' one-third interest and the present plaintiff succeeded to the remaining two-thirds interest. In 1956 the plaintiff commenced the current action to quiet title. At the hearing, there being no dispute as to the jurisdictional question, *i. e.*, the peaceable possession under claim of ownership by the plaintiff, the parties proceeded to exhibit their respective titles. At this juncture the defendants were faced with a problem of proof. The success of their claim ultimately rested upon an adequate showing of Mrs. Blakeman's title and possession. They could not adduce oral testimony of the essential facts necessary to meet the burden of proof imposed upon them owing to the demise of the parties having personal knowledge of the facts. They were compelled, therefore, to rest their cause upon the ancient adjudications, the transcribed records thereof, and the various instruments and conveyances available in their chain of title. They contended (1) that *Blakeman v. Bourgeois, supra,* constituted a favorable and final adjudication of their title; (2) that the transcript of the testimony in *Blakeman v. Bourgeois, supra,* was admissible in evidence in this litigation to prove the essential facts; (3) that *Ocean City Association v. Cresswell, supra,* adjudicated Mrs. Blakeman's title and that that case is *res judicata* or collateral estoppel on the issue; (4) that the transcript of the testimony in *Ocean City Association v. Cresswell, supra,* was admissible in evidence in this litigation, and (5) upon the remand, that the after acquired title (Chain II) of Katherine M. Connolly and Southern Gardens, Inc., inured to the benefit of the purchase money mortgagee, Higgons, who upon foreclosure acquired a good title.

The trial court held against defendants on all grounds and entered a judgment declaring plaintiff's title "to be good and free from any claim, estate, interest, right in, or lien, or encumbrances."

The Appellate Division affirmed the determination below in all respects. The reasons advanced by both courts are recited in the reported opinions previously referred to and we see no reason to repeat them here. The reasons advanced below by the defendants are repeated and urged on this appeal.

█ Our view is that the case of *Ocean City Association v. Cresswell, supra,* did adjudicate the question of the superiority of Mrs. Blakeman's title and that the present plaintiff, being in privity with the Ocean City Association, is collaterally estopped from denying the efficacy of the former adjudication. As a consequence, we deem it unnecessary to pass upon the other questions presented.

█ The rule in respect to collateral estoppel was succinctly stated by the United States Supreme Court in *Southern Pacific R. R. Co. v. United States,* 168 *U. S.* 1, 48, 18 *S. Ct.* 18, 42 *L. Ed.* 355 (1897), quoted from by Justice Jacobs in *N. J. Highway Authority v. Renner,* 18 *N. J.* 485, 494 (1955). It is

"The general principle announced in numerous cases is that a right, question, or fact distinctly put in issue, and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and even if the second suit is for a different cause of action, the right, question or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified."

See also *Restatement, Judgments,* § 68 (1942); *Scott, "Collateral Estoppel by Judgment,"* 50 *Harv. L. Rev.* 1 (1942).

█ Plaintiff admits that by reason of its successorship to the Ocean City Association's interest in the land it is in privity with them. See also *Restatement, Judgments,* § 89 (1942); *Tibbals v. Mica Mountain Mines, Inc.,* 172 *F. 2d* 449 (10 *Cir.*), *certiorari* denied 337 *U. S.* 925, 69 *S. Ct.* 1169, 93 *L. Ed.* 1733 (1949); *Note, "Developments in the Law of Res Judicata,"* 65 *Harv. L. Rev.* 818, 850 (1952).

But it asserts (a) that the court in *Ocean City Association v. Cresswell, supra,* did not, in fact, adjudicate the issue of title, and (b) if it did, the adjudication was unnecessary to the decision of the controversy. We grant that both actual litigation of an issue and the necessity of the litigation of the issue to support the judgment rendered are preconditions to the successful assertion of a plea of collateral estoppel, see *Borough of Milltown v. City of New Brunswick,* 140 *N. J. Eq.* 565 (*E. & A.* 1947); *Restatement, Judgments,* § 68 (1942); if either fails, the party asserting the estoppel cannot prevail on the defense.

The gist of plaintiff's present contention as set forth in its brief on the issue of collateral estoppel is as follows:

"The question of the basic title to the realty involved was nowhere raised in the pleadings. What was being sought was a conveyance of whatever interest Blakeman had. The pleadings filed in that case clearly indicate that. Obviously, where a vendee seeks specific performance, he does not attack the validity of the vendor's interest unless he seeks an abatement."

Of course, the plea of collateral estoppel cannot be decided *in vacuo,* but must be predicated upon a careful study of the entire record of the proceedings in order to ascertain the issues projected therein and the applicable legal principles involved. See *Camden, Atlantic, etc., Co. v. Ventnor City,* 106 *N. J. L.* 125 (*E. & A.* 1929); *Locher v. Locher,* 112 *N. J. Eq.* 25 (*Ch.* 1932); *Nystrom v. Pennycook,* 29 *N. J. Super.* 456 (*App. Div.* 1954).

In this connection, it might be noted that we have found the excerpts of the record of the proceedings in *Ocean City Association v. Cresswell, supra,* contained in the present record lacking in several respects and we have obtained and utilized the entire record in the cause of *Ocean City Association v. Cresswell, supra,* as contained in the bound volume (vol. 306) of the record in the Court of Errors and Appeals for the year 1906.

It will be recalled that at the time of the institution of the proceedings, 1903, in *Ocean City Association v. Cress-*

*well, supra,* the Ocean City Association held the following property interests in the litigated land: (a) a one-third interest in the Blakeman contract with Gandy, Miller and Cresswell (it acquired Gandy's interest, Miller's interest in the meantime having been assigned to Higgons); (b) an assignment and quitclaim of Mrs. Blakeman's interest, acquired two days later; (c) a one-quarter interest in the Bourgeois title (Chain II). Higgons and Cresswell had acquired from Mrs. Blakeman a quitclaim deed ꞌdated August 30, 1897, which they recorded (although admittedly Mrs. Blakeman had not received the purchase money called for by the contract). By its pleadings and prayers for relief the Ocean City Association sought a cancellation of the recorded quitclaim deed on the ground that it had been obtained by fraud, and a declaration that the agreement between Mrs. Blakeman and Gandy, Miller and Cresswell was forfeited for the reason that Mrs. Blakeman had tendered performance, which tender was wrongfully refused by the defendants. It alleged that shortly after the agreement Mrs. Blakeman drew up and tendered a quitclaim deed to the defendants but that the defendants wrongfully insisted upon a warranty deed. It was urged that a quitclaim deed constituted a full performance of her contractual undertakings for the reason that "the only right, title and interest of the said Martha Ann Gandy in the said land and premises, consisted of her claim to the same under and by virtue of a certain mortgage, made thereon by one Somers C. Godfrey to Alfred Cooper, Barton F. Henderson and Thomas Franklin Cooper, partners, trading as Cooper, Henderson & Company, dated November 7th, 1853, and recorded in the Clerk's office of Cape May County, November 10th, 1853, in Book F of Mortgages, page 4 etc., of which she claims to be the assignee, by assignment from Robert K. Matlack, attorney of the said Cooper, Henderson & Company, dated March 19th, 1860." The Ocean City Association further alleged in its pleadings that Mrs. Blakeman "failed to destroy the said quit claim deed, executed, but not delivered, by her as aforesaid, and she mislaid or lost the same, which afterwards,

in some way unknown to her, without the payment to her of the consideration, and without her knowledge or consent, but by fraudulent means, came into the possession of the said John G. Gandy, Charles G. Miller and David P. Cresswell, or some of them, who, on the 4th day of March, 1902, fraudulently caused the same to be recorded in the Clerk's office of Cape May County, in Deed Book No. 169, page 153 etc." By way of answer Higgons and Cresswell denied that the quitclaim deed was fraudulently obtained. Their contention was that the contract between themselves and Mrs. Blakeman required a "deed with a clear title" for the premises; that pursuant to an agreement they advanced the funds necessary for the institution of the quiet title action in *Blakeman v. Bourgeois, supra;* and that Mrs. Blakeman delivered the quitclaim to them because "she was fearful that real estate sharkes [*sic*] would in some way secure the said land as described in the said quit-claim deed and it was her wish and desire that the said John G. Gandy, Charles G. Miller and defendant would receive the land and premises by them bargained for by said agreement with her." On the specific question, here pertinent, of Mrs. Blakeman's title the answer of John A. Higgons contained the following allegation:

"And this defendant answering further says that he denies that the only right, title and interest of the said Martha Ann Gandy in the said land and premises consisted of her claim to the same under and virtue of a certain mortgage made thereon by one Somers C. Godfrey to Alfred Cooper, Barton F. Henderson and Thomas Franklin Cooper, partners trading as Cooper, Henderson and Company, dated November 7, 1853 and recorded in the Clerk's office of Cape May County November 10, 1853, in Book F.10 of Mortgages, page 4, of which she claims to be the assignee by assignment from Robert K. Matlack, Attorney of the said Cooper, Henderson and Company, dated March 19, 1860; *but on the contrary this defendant believes that the said Martha Ann Gandy, at the time of the making of the said agreement was seised in fee simple of the said premises,*". (Emphasis supplied)

Both defendants filed cross-bills against the Ocean City Association and Mrs. Blakeman, seeking specific performance of the original agreement and a decree that: "Martha Ann

Gandy alias Martha Ann Blakeman to make and give to the complainant, the said Ocean City Association, John A. Higgons and David P. Cresswell, defendant, a better and more sufficient deed than the quit claim deed now of record."

It is apparent from the preceding development of the pleadings that the issue of the quality of Mrs. Blakeman's title was in litigation in two ways. First, whether her interest was limited solely to that of a mortgagee in possession, so that a tender of a quitclaim deed was a sufficient performance of her contract, and secondly, by way of vendees', Cresswell and Higgons, prayer for relief requiring Mrs. Blakeman to convey to them by warranty deed. An adjudication of Mrs. Blakeman's title was not essential to the ultimate disposition of the controversy on the first ground mentioned for the reason that even though Mrs. Blakeman may have had a defective title the sufficiency of her tender is measured by the terms of the contract providing for a "deed with a clear title" and the defendants were within their rights under the contract to refuse the quitclaim deed.

But our conclusion is that the second ground advanced did necessitate an adjudication of Mrs. Blakeman's title and that the issue was actually litigated.

The trial court admitted the testimony in *Blakeman v. Bourgeois, supra,* on the issue of Mrs. Blakeman's title. The vice-chancellor's conclusion on that point is stated in *Ocean City Association v. Cresswell, supra,* 71 *N. J. Eq.* at *page* 294:

"The conclusion which I have reached is that Martha Gandy, or Blakeman, is bound to make a deed, a proper deed for this property. My notion about it was that perhaps this quitclaim deed would answer the purpose, but upon examination I find that it releases and quitclaims her right as assignee of Charles F. Campbell, and Cooper, Hendrickson & Company, by their attorney, R. C. Matlack, in and to that certain tract of land, &c., described in a certain mortgage. Her right does not depend upon any interest acquired as assignee of Charles F. Campbell. Her right to convey, *as developed here*, depends upon her possession of more than twenty years under the mortgage. It is perfectly well-settled, in this state, unless rebutted in some way, that that conveys a title which would be good in law." (Emphasis supplied.)

It is apparent that the issue of Mrs. Blakeman's title was actually litigated and the decree ultimately entered by the vice-chancellor directed that Mrs. Blakeman convey by deed with covenants of title confirms the necessity of the determination. The decree entered in favor of the defendants, Miller and Higgons on their cross-bill for specific performance provides:

"It is on this twenty fourth day of June, nineteen hundred and five, ordered, adjudged and decreed that the said articles of agreement be in all things specifically performed by the said defendant, Martha Ann Gandy, alias Martha Ann Blakeman, and that the said defendant Martha Ann Gandy, alias Martha Ann Blakeman, do within thirty days from the date of this decree, make, execute and acknowledge in due form of law and deliver to the said defendants, David P. Cresswell and John A. Higgons and to the said complainant a good and sufficient conveyance of the said premises, conveying to each of them an equal undivided one-third part thereof, with *the usual covenants against encumbrance*, and that she deliver at the same time to the said David P. Cresswell, John A. Higgons and the said complainant possession of the said premises;" (Emphasis supplied.)

 While it is true, as plaintiff advances, that ordinarily in a vendee's suit for specific performance the court will not pass upon the sufficiency of the vendor's title, but rather compel compliance with the terms of the agreement, that rule is inapplicable where, as in the case under consideration, some doubt is cast upon the sufficiency of the vendor's title. Specific performance is a discretionary remedy. *Gulvin v. Sunshine Park, Inc.*, 137 *N. J. Eq.* 249 (*E. & A.* 1945). Specific performance of a contract to convey realty at the instance of a vendee will not be granted where the vendor shows a complete failure of title. *Public Service Corporation v. Hackensack Meadows Co.*, 72 *N. J. Eq.* 285 (*Ch.* 1906). This rule comes within the general doctrine that a court of equity will not compel a party to a contract to perform that which is impossible. *Public Service Corporation v. Hackensack Meadows Co., supra; Restatement, Contracts,* § 368 (1932); 5 *Williston on Contracts (rev. ed.* 1937), § 1422, *p.* 3973. Similarly, although a vendee may compel specific performance of a contract where the vendor's

title is subject to some encumbrance, his only remedy is by way of a decree ordering the vendor to convey whatever interest he has, and abating the purchase price accordingly. *Hughes v. Hadley*, 96 *N. J. Eq.* 467 (*Ch.* 1924); *Maturi v. Fay*, 96 *N. J. Eq.* 472 (*Ch.* 1924), reversed on other grounds on rehearing, 98 *N. J. Eq.* 377 (*E. & A.* 1925); 5 *Williston, supra*, § 1436; Note, 40 *Harv. L. Rev.* 476 (1926).

Even where the vendee does not seek an abatement of the price, but at the trial a dispute develops concerning the sufficiency of the vendor's title, and the court determines the vendor's title is defective in some particulars, the appropriate remedy is to compel a conveyance of whatever the vendor has with a proportionate abatement of the purchase price. *Triplett v. Ivins*, 93 *N. J. Eq.* 202 (*E. & A.* 1921).

But it is clear that an equity court will not compel a conveyance by a warranty deed where it is aware of some defect in the vendor's title. It is a well recognized maxim that equity will afford complete relief, 5 *Williston, supra*, § 1430. To compel a conveyance by warranty deed where there was a reasonable doubt concerning the vendor's title would simply have resulted in a further suit at law on the covenant.

Since the Court of Chancery in *Ocean City Association v. Cresswell, supra*, compelled Mrs. Blakeman to convey by warranty deed it must, of necessity have concluded that Mrs. Blakeman had a good title. We recognize that all of the holders of the Bourgeois title were not represented in that suit (although Ocean City Association which held a one-quarter interest in that title was), and that unless there was such a substantial connection and identity of interest between the Ocean City Association and the holders of the remaining three-quarters of the Bourgeois title "as in reason and justice precludes a relitigation of the issue," *Hudson Transit Corporation v. Antonucci*, 137 *N. J. L.* 704, 707 (*E. & A.* 1948); *Bango v. Ward*, 12 *N. J.* 415, 422 (1953), they would not be bound by the adjudication of title; but the Ocean City Association and their successors in interest

to the land, including the present plaintiff, are bound. It could not, after the adjudication confirming Mrs. Blakeman's fee simple ownership of the land, acquire the remaining outstanding interests in the Bourgeois title, and thereby successfully assert the superiority of that title over Mrs. Blakeman's against Higgons, Cresswell or their successors in interest. Rather, they are estopped by principles of *res judicata* and collateral estoppel. The issue having been once determined, it is not subject to a later redetermination between the same parties to prior litigation or their privies. *Restatement, Judgments,* §§ 68 and 70. *Cf. New Jersey Highway Authority v. Renner, supra.*

To fortify the conclusion reached and to establish that the Court of Errors and Appeals was aware of the enunciated principles concerning the necessity for the adjudication of title in order to grant the requested conveyance from Mrs. Blakeman by warranty deed, we refer to the argument made by counsel for Mrs. Blakeman and the Ocean City Association in their brief, on the appeal of that cause to the Court of Errors and Appeals. Counsel argued that the vice-chancellor was in error in granting the defendants' cross-bill for specific performance of the contract by warranty deed and contended that a court of equity should refuse to compel performance of the contract on the ground that

"(1) Said agreement is not one as to which a Court of Equity will decree a specific performance, because of the fact that the vendor therein named (Blakeman) *could not at the time of the execution of said agreement, nor has she ever been able since its execution, to give a good title, clear of all encumbrances, for the premises in question.*

\* \* \* \* \* \* \*

"d. It is well-established rule that a Court of Equity *will never decree a specific performance* of a contract *where such performance is impossible.* If performance be impossible, then the vendee must resort to an action at law to recover damages on account of the breach. 3 *Pomeroy Eq. Jurisp., sec.* 1405."

In determining the issues actually litigated, the arguments in the briefs of counsel are highly relevant. Where the briefs of counsel on appeal make repeated refer-

ences to a particular point it may be concluded that the matter was considered by the appellate tribunal. *McAllister v. Elliot*, 83 *N. H.* 225, 140 *A.* 708 (*Sup. Ct.* 1928).

The Court of Errors and Appeals in effect affirmed the decree of the Court of Chancery. However, they entered a formal reversal with instructions for modification of the decree below necessitated by a *pendente lite* conveyance by Mrs. Blakeman to the Ocean City Association.

The final decree entered by the Court of Chancery pursuant to the mandate of the Court of Errors and Appeals ordered that "the said defendant, Martha Ann Gandy, alias Martha Ann Blakeman, do within thirty days from the date of said decree, make, execute and acknowledge in due form of law and deliver to the said defendants, David P. Cresswell and John A. Higgons, and to the complainant, Ocean City Association, a good and sufficient conveyance of the premises described in said agreement, conveying to each of them an equal undivided one third part thereof, with the usual covenants against encumbrances, and that she deliver at the same time to the said David P. Cresswell, John A. Higgons and Ocean City Association possession of the said premises," and further referring to the adequacy of the *pendente lite* conveyance (which deed was not before the court) ordered that "If the deed of the said premises made by the defendant, Martha Ann Gandy, to the complainant, the Ocean City Association, during the progress of the said cause, is less comprehensive in its grant and in its covenants, than the parties to the aforesaid agreement of May 18, 1897, had a right to require from the said defendant, then the decree should also adjudge that the said Martha Ann Gandy execute a further conveyance to the Ocean City Association, David P. Cresswell and John A. Higgons, in such form as to execute completely the said agreement."

Clearly, the rejection of counsel's plea, as evidenced by the final decree entered pursuant to the mandate of the Court of Errors and Appeals, could only have been predicated upon a concurrence in the finding below that Mrs. Blakeman had a fee simple title to the premises in dispute.

The judgment is reversed and the cause is remanded to the Superior Court, Chancery Division, for the entry of a judgment consonant with this opinion.

WEINTRAUB, C. J. (concurring). I would place the result on what to me is surer footing.

Higgons conveyed a third of the Blakeman title to Miss Connolly in 1925 and reacquired it from her successor through the foreclosure of the purchase money mortgage. Defendant Gallagher claims through Higgons. The trial court and Appellate Division approached the matter on the premise that Gallagher had the burden of proving Mrs. Blakeman acquired title by possession, either adverse or under the 1853 mortgage she held. I cannot agree with that view.

It is a settled rule that a mortgagor is estopped to dispute the title mortgaged. 19 *Am. Jur., Estoppel,* §§ 5–6, *p.* 603; 36 *Am. Jur., Mortgages,* § 240, *p.* 811; 59 *C. J. S., Mortgages,* § 200, *p.* 263; 3 *American Law of Property* (1952), § 15.18, *p.* 841; *Annotation, L. R. A.* 1918B, 734, 735; *Den ex dem. Burhans v. Vanness,* 10 *N. J. L.* 102 (*Sup. Ct.* 1828); *Den ex dem. Wyckoff v. Gardner,* 20 *N. J. L.* 556 (*Sup. Ct.* 1846); see *Demarest v. Hopper,* 22 *N. J. L.* 599 (*E. & A.* 1850). If a covenant should be necessary, the covenant of quiet enjoyment contained in the mortgage clearly suffices. *Tully v. Taylor,* 84 *N. J. Eq.* 459 (*E. & A.* 1915). Thus I start with the proposition that Miss Connolly was estopped to dispute the title she encumbered until and unless proof were adduced to lift that bar.

I agree a purchase money mortgagor may be freed of the estoppel. 36 *Am. Jur., Mortgages,* § 249, *p.* 816; 59 *C. J. S., Mortgages,* § 185, *p.* 239; *Annotation, L. R. A.* 1918B, 734, 738. But I believe the required showing is that the grantor-mortgagee committed a fraud as to title or breached a covenant with respect to it, with the burden of proof resting upon the mortgagor. I find no evidence of either thesis.

The sole proof is that record title was held by some one other than the grantor-mortgagee. In a controversy between

claimants unaffected by prior transactions between them, proof of record ownership in one may well suffice to cast upon the other the burden of proving title *via* possession. And so, for example, in a suit for specific performance the vendor may have to overcome proof of record ownership in another by showing the requisite possession to establish a supervening title. *Cf.* 55 *Am. Jur., Vendor and Purchaser,* § 156, *p.* 627; *Annotation,* 57 *A. L. R.* 1253, 1490 (1928). But the present situation is different. A deed was delivered. It contained no representation that the title conveyed was based upon a recorded ownership. A grantee who claims fraud or breach of covenant of title must prove the absence of title, and since title by possession, adverse or under a defaulted mortgage, is a good title, a grantee must negate these sources of ownership unless he shows a representation or covenant that the title was of record. Not only is there no proof that Higgons represented his title to be of record and no covenant that it was, but on the contrary the facts show inescapably that Miss Connolly had to know that Higgons claimed a title based upon possession. The Higgons deed is dated November 30, 1925 and the Ocean City Association deed is dated the following day. The record title was in Ocean City Association alone. Miss Connolly therefore must have known that Higgons claimed title by another route; there was no other basis for dealing with him. It is evident that by 1925 the claimants through the record owner had developed a healthy respect for the Blakeman claim. In 1900 they fought with her in *Blakeman v. Bourgeois,* 59 *N. J. Eq.* 473 (*Ch.* 1900), wherein she established her peaceable possession under claim of title as of the date the bill of complaint was filed. At the same time Ocean City Association, then the holder of a fourth of the record title, sought to buy Mrs. Blakeman's title and waged more litigation in an effort to acquire it. *Ocean City Association v. Cresswell,* 71 *N. J. Eq.* 292 (*E. & A.* 1906). We may fairly infer that no effort was made to oust Mrs. Blakeman from possession during the period between those actions. The high regard with which Miss Connolly held

the Blakeman claim is evident from the fact that the Higgons deed bore $35 in revenue stamps as against $75 in stamps on the deed from Ocean City Association. In addition, she exchanged covenants with Higgons.

The question is whether a purchaser who accepts a title known to be based upon facts *dehors* the record and gives a purchase money mortgage with a covenant of quiet enjoyment may some 30 years later, after time has stilled the witnesses, call upon the grantor to prove the facts the purchaser had once found sufficient. It seems clear to me she cannot escape the basic principle of estoppel. If it be thought that I infer *too much* in concluding that she knew Higgons claimed a title based upon possession, still the burden should be hers to prove fraud or breach of covenant, *i. e.,* that Higgons did not have such title, and no such proof was offered.

The question remains whether the estoppel which binds Miss Connolly binds her successors as well. It is generally said the estoppel binds the party and his privies, but a conflict of authority has developed under recording statutes. 3 *American Law of Property* (1952), § 15.22, *p.* 849; 4 *Tiffany, Real Property* (*3d ed.* 1939), § 1234, *p.* 652. In our State, an innocent purchaser may rely upon the title record and hence be freed of an estoppel not evident from a title search. *Wack v. Collingswood Extension Realty Co.,* 114 *N. J. Eq.* 253 (*E. & A.* 1933); *Bingham v. Kirkland,* 34 *N. J. Eq.* 229 (*E. & A.* 1881). The deed from Higgons to Miss Connolly is dated November 30, 1925, and both the deed from Ocean City Association to her and her deed to Southern Gardens, Inc. are dated December 1, 1925. Miss Connolly may have been a "straw" and if that is so, or if otherwise Southern Gardens, Inc. knew of the mortgage when it took title, it would be bound. Southern Gardens, Inc. conveyed to plaintiff in 1955. To escape the estoppel plaintiff must prove that it did not know of the mortgage when it took title or that its grantor Southern Gardens, Inc. was an innocent purchaser. There is no proof that either bought without knowledge.

Under the complex circumstances of this case, plaintiff should have an opportunity to offer proof with reference to estoppel and hence I would remand the cause to that end.

Under this approach it is not necessary now to consider the doctrine of *title by estoppel*. That doctrine has common roots with the broader principle of estoppel discussed above, but, as I see the situation, the question whether title should inure by estoppel cannot arise until it first is shown that Higgons did not have title, and as the record now stands there is no evidence that he did not.

I would reverse the judgment and remand the matter for further proceedings not inconsistent with this opinion.

HEHER, J. (concurring in result). It is settled doctrine that an after-acquired title inures to the benefit of a mortgagee. *Decker v. Caskey,* 3 *N. J. Eq.* 446 *(Ch.* 1836); *Den ex dem. Wyckoff v. Gardner,* 20 *N. J. L.* 556 *(Sup. Ct.* 1846); *Tully v. Taylor,* 84 *N. J. Eq.* 459 *(E. & A.* 1915). It is ofttimes treated as an obligation founded on a covenant of seisin or warranty in a deed or mortgage. But it is in the nature of an equitable estoppel to serve the ends of essential justice; and it is on the ground of inequity and unconscionable advantage that the principle is held inapplicable to a purchase-money mortgage, depending upon the particular circumstances. *Smith v. De Russy,* 29 *N. J. Eq.* 407 *(Ch.* 1878), where the issue concerned the relative rights of two mortgagees; *Cooper v. Bloodgood,* 32 *N. J. Eq.* 209 *(Ch.* 1880); *Shreve v. Harvey,* 74 *N. J. Eq.* 336, 337 *(Ch.* 1908); *Florida Land Investment Co. v. Williams,* 84 *Fla.* 157, 92 *So.* 876, 26 *A. L. R.* 171 *(Sup. Ct.* 1922); *Randall v. Lower,* 98 *Ind.* 255 *(Sup. Ct.* 1884); *Butterfield v. Lane,* 114 *Me.* 333, 96 *A.* 233 *(Sup. Jud. Ct.* 1915). See 26 *A. L. R.* 175, for the cases elsewhere which apply the principle to purchase-money mortgages; and the suggestion in *Hitchcock v. Fortier,* 65 *Ill.* 239 *(Sup. Ct.* 1872), that in weighing the equities of the particular case it may be taken into account that "[n]either law nor equity confines

the vendor of land to the land sold as a means of enforcing payment."

My primary concern is with the hypothesis that *Ocean City Association v. Cresswell*, 71 *N. J. Eq.* 292 (*E. & A.* 1906) "did adjudicate the question of the superiority of Mrs. Blakeman's title * * *." The decree there entered, June 24, 1905, amended March 20, 1907 to provide also for a conveyance by complainant of the title vested in it by Mrs. Gandy's deed for the lands, as a means of effectuating the decree, in terms directed the specific performance of Blakeman's 1897 agreement to sell and convey the lands to Higgons, Cresswell and Ocean City Association, the latter as the assignee of Gandy; Mrs. Blakeman, then Martha Ann Gandy, was enjoined to deliver to Higgons, Cresswell and Ocean City Association "a good and sufficient conveyance of the premises, conveying to each of them an equal undivided one-third part thereof, with the usual covenants against encumbrances," and possession as well. But there was no adjudication of title. In all seeming, the parties bargained for a conveyance of the title presumed to be in Blakeman, the vendor; and specific enforcement was decreed under a cross-bill interposed by Higgons and Cresswell for such performance of the agreement of sale. This is not a case of the vendee's resistance to specific performance on the ground of a deficiency or defect of title; a question of title was not made by any of the parties; there was no such issue in the case. The complainant Ocean City Association prayed for cancellation of this Blakeman agreement and specific performance of its own later agreement with Mrs. Blakeman; and it did not impugn the title. See *Sutherland v. Briggs,* 1 *Hare* 26, 11 *L. J. Ch.* 36, 6 *Eng. Rul. Cas.* 733; *Pomeroy's Equity Jurisprudence (5th ed.),* section 1405a; 49 *Am. Jur., Specific Performance, section* 102.

There was no deceit or misrepresentation in the conveyance by Higgons to Connolly for Southern Gardens, Inc. The grantee knew full well the history of the title, and was aware of the record title in Bourgeois, proceeding from the

1854 execution sale to Hopkins. The title had been in litigation in *Blakeman v. Bourgeois,* 59 *N. J. Eq.* 473 (*Ch.* 1900), but the issue did not go to a final hearing and decree. Higgons and Cresswell bargained for the Blakeman title; and so also did Connolly and Southern Gardens, Inc. later on. The consideration for the conveyance under the agreement enforced in *Ocean City Association v. Cresswell,* cited *supra,* was $500; the mortgage given by Connolly to Higgons secured payment of the principal sum of $23,000 and interest, and the decree in foreclosure, in accordance with the finding of the master, fixed the amount due on the bond and mortgage at $27,872.17.

Southern Gardens, Inc., still the owner of the lands, and Connolly were made parties defendant to the foreclosure suit; there was a decree barring their equity of redemption, and the decree was followed by a sale and a deed by the sheriff to Higgons for the mortgaged one-third interest in the land.

Higgons conveyed his one-third interest to Connolly on November 30, 1925; the Association's conveyance of its two-thirds interest was made to Connolly the following day; and she thereupon, the same day, conveyed the entire interest to Southern Gardens, Inc., and thus, on December 1, 1925, it seems to be conceded, the latter corporation by a merger of the conflicting titles indisputably became the owner of the lands in fee, subject to Higgons' record purchase-money mortgage on the one-third interest which he had conveyed to it, through the medium of Connolly. By *mesne* conveyances the defendants Gallagher acquired Higgons' title. Plaintiff in 1955 took a conveyance of the title of Southern Gardens, Inc. from its trustees in dissolution, and then came this proceeding to quiet title on the assumption that plaintiff's title under the 1854 execution sale to Hopkins is superior to the title derived from Blakeman alone.

There is no conclusive showing here that the Blakeman title is defective and that Higgons has broken his own covenant and is himself primarily in the wrong.

Higgons was not guilty of fraud, bad faith, or misrepresentation; and there is every reason in equity and good con-

science for the application of the general rule that an after-acquired title inures to the benefit of the mortgagee. There is no countervailing equity.

On this ground alone, I concur in the reversal of the judgment, to the end that there be judgment final for defendants.

WEINTRAUB, C. J., and HEHER, J., concurring in result.

*For reversal*—Chief Justice WEINTRAUB, and Justices HEHER, WACHENFELD, BURLING, JACOBS, FRANCIS and PROCTOR—7.

*For affirmance*—None.